# Moses Gorgerat, Francis Gorgerat and John Barnes *against* William M'Carty.

### S. C. 2 Dall. 144.

The possession of a bill of exchange and protest, is not sufficient evidence, without further proof, in a suit by the payee or indorsee against the acceptor, of a subsequent indorsee's having received the amount of the bill.   In bills payable to order, there is a distinction between those which are indorsed in blank, and such as are specially indorsed.   Possession in the former case is evidence of title, but not in the latter.

Bill of exchange lost, and an indorsement forged thereon, and the money paid by the acceptors (who were of the same house with the drawers) the real payer shall recover the money.

THIS action was brought on three bills of exchange dated 19th December 1786, and drawn upon the defendant by the plaintiffs, for 3545 livres and two sols each, to be paid to their order.   These bills were indorsed by the plaintiffs to Paul Ant. Fauré, and Co., and by them to others.   Defendant accepted the bills, but they were protested for non-payment. Plaintiffs in their declaration aver the payment of them with costs and damages to the last indorsee by Paul Ant. Fauré, and Co. and that the plaintiffs repaid the costs and damages to them.   A trial was had in July term 1790, and a verdict had for the plaintiffs for 91ll. 13s. 5d. besides costs of suit, subject to the opinion of the court on a point reserved; to wit, whether the possession of the bills and protests be "sufficient evidence without further proof" that the plaintiffs had paid the subsequent indorsee the amount of the bills, or whether it be *prima facie* evidence, sufficient, unless contrary evidence be produced on the part of the defendant?

This reserved question was argued last September term by Messrs. Rawle and Du Ponceau for the plaintiffs, and Mr. Ingersol for the defendant.

The plaintiff's counsel relied greatly on the case of Morris *v.* Foreman, Dallas 193, and further cited 5 Burr. 2688, that *prima facie* evidence is conclusive, until contradicted; also the ordinances of Louis 14th that the bearer of a bill may prosecute it for payment.

For the defendant was cited 1 Lord Raym. 742. Mendez *v.* Careroon, and much relied on, which is taken notice of in Lovelass on bills of exchange, 177.   But as the arguments on both sides were fully taken up and considered by the court in giving their opinions *seriatim*, they are here omittted.

The court this term, gave their opinions:

[Gorgerat et al. *v.* M'Carty.]

*M'Kean C. J. The acceptor of a bill of exchange [*95 is only liable to the last indorsee; for all the prior indorsers have parted with their interest in it, and are presumed to have received a valuable consideration for it, and therefore can have no right to the money a second time. But if the last indorsee protests the bill for non-payment, and afterwards receives back the money from a prior indorser, such indorser acquires a new title to receive the money from the acceptor, by such payment. So that at the time this action was commenced, the defendant was liable to no person but the last indorsee, or the prior indorser who had paid him. This is by the custom of merchants, as appears by the case of Death *v.* Serwenters. Lutw. 888. Lewin *v.* Brunette. Lutw. 898. The plaintiffs have accordingly alleged that they paid the subsequent indorsee, but offered no proof of it except the mere production of the bills and protests. This is not sufficient; they should have produced a receipt from the last indorsee, or some witness or evidence of payment. The usual evidence in such a case is a receipt at the foot of the protest. 1 Lord Raym. 742. In that case, the merchants who had been sworn respecting the custom, were of opinion that this was the only evidence; but I agree with Lord Holt, that if payment be any way sufficiently proved, it is sufficient.

If the defendant should pay the plaintiffs the amount of the bill, and the last indorsee should hereafter sue him, what can prevent him from recovering the money? The defendant cannot prove, that he had been paid by the plaintiffs, who may have come to the possession of the bills by trover, bailment for a special purpose, or by fraud. Why was not the action brought in the name of the last indorsee? If it had, the holding of the bills might have raised a presumption that the plaintiffs were agents for him. The case in 1 Lord Raym. 742, is in point. There the plaintiff not only had possession of the bill, but he had been sued by the subsequent indorsee and had a judgment against him. What might be admitted as *prima facie* evidence in other cases, will not do in such a case as this, by reason that the custom among merchants is otherwise, which appears from all the writers and collectors of cases from the report by Lord Raymond until the present time, to be considered as the rule. I am therefore of opinion with the defendant.

Shippen, J. I concur. I acknowledge that on the argument, I thought differently, from an apprehension that the course of mercantile negociations might be obstructed. But on considering the case immediately after last term, I was fully satisfied that both on principle, and by law, the mere holding of a bill of ex*change cannot intitle an inter- [*96 mediate indorsee to call upon the acceptor for payment. Upon principle, it cannot be. Because when a man indorses an accepted bill, he parts with all his right to the

[Gorgerat et al. *v.* M'Carty.]

indorsee for a valuable consideration, and as to him the acceptor is discharged.    The right of calling upon the acceptor can never be regained but by taking up the bill from the last indorsee, and paying him the money.    Some'evidence of this payment must be necessary, otherwise one who finds or steals the bill might sue the acceptor, and he would be answerable again to the last indorsee, who never having received satisfaction, would surely recover from the acceptor.    The usage upon inquiry I find to be now what it appears to have been in Lord Holt's time, that when the last indorsee receives the money from an intermediate indorser, he gives a receipt upon the protest.    This always accompanies the bill, and shows who has the legal and equitable right to sue the acceptor.

The case of Mendez *v.* Careroon in 1 Ld. Raym. 742, does not stand alone.    In 1 Lutw. 888, the same principle appears in an adjudged case upon a writ of error.    The court say that when the payee has once indorsed the bill, the acceptor is entirely discharged as to him, unless he becomes again entitled to receive the money by an actual payment to the indorsee.    Some later cases have the same aspect, and no case appears to the contrary.

Yeates J.    The difficulties which struck my mind on the argument of this cause at the last term were, that an idea seemed to be generally entertained, that payment to the holder of a bill of exchange would discharge the acceptor, under the authority of Morris *v.* Foreman; Dall. 193; and that if additional evidence to the possession of the bill was required, it might throw these valuable mediums of trade under considerable difficulties.

On the first point my mind was fully made up in the vacation by consulting the cases of Ancker *et al. v.* the Bank of England, Doug. 615; and Allen administrator *v.* Dundas, 3 Term. Rep. 129.    In the latter case, Shepherd *pro quer.* cited the following resolution, *coram* Buller J.    "In Cheap and "another *v.* Harley and Drummond, a few days ago, at the "sittings here, the defendants, who had a house in America "as well as in London, drew two bills of exchange there, the "first and second of the same tenor and date, on their house "here, payable to the plaintiffs.    One of them being lost, "came into the hands of a third person, who forged an in-"dorsement of the payees, and received the amount of it from "the defendants here; and af * terwards the real pay-"ees brought their action upon the latter bill and re-"covered."

*97]

This resolution effectually establishes the point that payment by the acceptor of a bill of exchange to the holder does not necessarily discharge him.    See also 4 Term Rep. 28. Nor ought it, upon the most solid grounds.

When an indorser, according to the usage of merchants, parts with his right by an indorsement, and the bill in this

[Gorgerat et al. *v.* M'Carty.]

state is accepted, the acceptor is liable only to the person in whom the right of the bill is vested, and until an intermediate indorser has power to demand it, either under the authority of the last indorsee, or by payment to the last indorsee regains a right to the bill, he has no claim whatever against the acceptor.

It is true, that in the case of Dehers *et al. v.* Harriot, 1 Show. 163, it was held that on a bill of exchange made payable to A, who indorses it to B, who indorses it to C, which is protested for non-payment, B may bring an action on this bill against the drawer, notwithstanding his indorsement. But it is to be observed in this cause, that the indorsement to B was special. "Pray pay to B value on my account;" and in Sir Bartholomew Showers's argument he says, p. 164, " We had proved on the trial, C had no interest in the monies, " and was to receive the money for the plaintiff as his ser- " vant."

The case in 1 Ld. Raym. 742, is expressly in point, and is recognized by the latest writers on the law of bills of exchange, viz. Cunningh. on Bills of Exchange, 47, 91; Lovelass on Bills and Notes, 179; Kyd, 150.

Besides, the plaintiffs in their declaration, with strong reason, aver the payment of the bills with costs and damages, by Fauré & Co. to the last indorsee, and that the plaintiffs repaid the same to them. If it was necessary for the plaintiffs to make these averments, in order to sustain their suit, it surely must be more than matter of mere form; and I apprehend if the laying of the payment to the last indorsee was indispensable, that the proof of it must be equally indispensable.

Nor do I think that this doctrine will throw bills of exchange under any unreasonable difficulties. By obtaining a receipt from the last indorsee at the foot of the protest, every difficulty is obviated in the case of all the other indorsers. My opinion, therefore, is, that though the holding of the bill is a circumstance to shew that the possessor is entitled to the money due thereon, yet it is not of itself sufficient evidence for this purpose according to the rules of law and the usage of merchants. *Vide* 4 Term Rep. 32.

\* Bradford, J. It seems to be fully settled in Death [\*98 *v.* Serwenters, Lutw. 888, that by a special indorsement of a bill of exchange, the indorser parts with his right, and discharges the acceptor as to any payment to him, and that he can regain it only by taking up the bill and making payment to the last indorsee, in whom the property of it is vested. The same doctrine is laid down in Brunette *v.* Lewin, reported in Carth. 130, and afterwards in error in Lutw. 896, where it is held that if the bill is specially indorsed, he cannot recover, unless at the trial there be evidence of the payment to the last indorsee.

[Gorgerat et al. *v.* M'Carty.]

This payment, therefore, is a material part of the plaintiffs' case. They themselves state it as such in their declaration, and rightly: for it is clear from the case of Brunette *v.* Lewin that if it were not stated, the omission would be fatal. Carth. 130. Being a material fact, it must be proved.

The plaintiffs do not appear to deny this; but they contend possession of the bill is *prima facie* evidence of property in it. This is indeed the case with bills payable to bearer, and sometimes when the bill is payable to order. But among bills payable to order there is an obvious and familiar distinction between those which are indorsed in blank, and such as are specially indorsed. Possession of the former is evidence of title, and Lord Mansfield assigns the reason in Peacock *v.* Rhodes, Doug. 611. "Bills indorsed in blank," says he, "are considered as bills payable to bearer: both pass by delivery. Possession is in both cases proof of property in them."

When the indorsement is general, the holder may strike out all the indorsements, but that of the payee, and declare as indorser to him; but when it is special, the name of the proprietor appears on the face of the indorsement, and the holder must derive his title through him.

The last indorsee may transfer his right either by his indorsement, or by accepting payment from the indorser. If the first had been the case before us, and the present plaintiff had claimed as his indorsees, it is clear they must have proved his hand writing. Possession would have been no evidence of that. Why then should it be evidence of payment? The one is a fact as material as the other, and it is as easy to prove a receipt as to prove an indorsement.

But the case of Mendez *v.* Careroon, 1 Ld. Raym. 743, if it be law, goes the whole length of determining the point in question. It was doubted at the bar, but I agree with the rest of the court, that there is no ground to suspect its authority. It is neither denied, nor doubted, nor is the principle shaken in any subsequent case; on the contrary, it has *99] all the support which * we can reasonably expect, that of its being handed to us in our abridgments and elementary treatises as established law. We find it in 4 Vin. 265, in the digest of adjudged cases in the King's Bench, and in all the law dictionaries. It has been already mentioned that it is twice quoted by Cunningham in his treatise on this subject, introduced by Lovelass, who published his book in 1789, and by Stewart Kyd, whose preface bears date in October 1790.

If this case needs any further confirmation, it strikes me that the same principle is to be discovered in Pigot *v.* Clark, reported in 1 Salk. 126, and 12 Mod. 192. There the plaintiff, who was the payee, had indorsed the bill, and afterwards brought this action against the acceptor; it was objected, that

[Gorgerat et al. *v.* M'Carty.]

the plaintiff's right had been transferred by the indorsement, and that he could not maintain the action.    But the court held, that the indorsement being in blank did not necessarily import a transfer, and add—"But if the blank had been filled up, the indorsee "alone could have maintained the action."

This at once establishes the distinction between a general and special indorsement, and implicitly declares, that the possession of a bill specially indorsed, is no evidence of a right to its contents.

But the plaintiffs rely on the case determined in this court between Morris *v.* Foreman, in the report of which it is said the court held that "the possession of a bill of exchange is "evidence of an authority to demand its contents."    Dall. 193.    It is to be observed, that this is but a short note, without any state of facts; and on enquiry, it seems to me, that the language of the report is more extensive than the principle of the case will warrant.    I have examined the record, and into the facts of that cause, and that the decision may be understood, I will state them.    It was an action between the original parties, brought by the payee against the drawer, upon a bill drawn during the late war on a British subject, and under a particular agreement respecting damages in case of protest.    Morris remitted this bill to London on his own account, to Messrs. Clifford and Tysett, who had no manner of interest whatever in its contents, but with this indorsement —"Pay to the order of Clifford and Tysett."    The bill being protested, this action was brought.    The indorsement was not set forth in the declaration, but appeared on the bill and protest, and thereupon the defendant moved for a non-suit, and insisted that the action could be brought only by the indorsee; but the court held that the action was maintainable in the name of the plaintiff.    Under the circumstances before them, the court, doubtless, considered the indorsement as a mere au*thority to receive the money for the plaintiffs, and not as a transfer of interest.    In this view it [*100 is no more than was ruled long before in Dehers *et al. v.* Harriot, already cited by Mr. Justice Yeates.    1 Show. 164. In strictness, perhaps, it ought to appear on the face of the indorsement, whether it were intended as a transfer, or as a mere authority.    2 Burr. 1227.    But be this as it may, the principle on which the case of Morris *v.* Foreman seems to have been determined, does not in any degree interfere with the present decision.

The inconveniences which might result from so strict a rule of evidence were strongly urged, and struck me forcibly on the argument.    But on a closer inspection they will in a degree disappear, or be found to be balanced by opposite advantages.    The payee may avoid them, if he pleases, by a general indorsement, which is now the most common, and is said to be the most proper one.    But if he will restrict the

[Gorgerat et al. *v.* M'Carty.]

payment to a particular person, and the bill comes back, he must submit to the inconvenience he himself has created. Nor is the inconvenience greater than that to which every special indorsee is subject, who must prove the hand writing not only of the first, but of every indorser through whom he claims. The difficulty of tracing the payment to different indorsees, may be avoided by a general receipt of the last indorsee.

Besides, it is a real benefit to the mercantile world, that the bills may be thus restrained. It is a desirable security against accident or fraud. Even bank bills, generally payable to bearer, are framed in this manner for distant remittances. Being made payable to order, they are specially indorsed, and the payment being thus restricted to a particular person, the remittance is put out of hazard. The right of the indorsee appears on the bill: the bank is bound to pay the money to him or to his order, and if they pay it to any one else, it is clear, from Doug. 617, and 3 Term Rep. 129, cited by Mr. Justice Yeates, that they must pay over again. To admit that possession is any evidence of right in this case, would be to make all bills in effect payable to bearer. It would destroy the security intended by a special indorsement, would multiply losses and increase the temptations to theft.

I have taken no notice of the ordinances of France cited by one of the plaintiffs' counsel. This is not a question of general law, but a question of evidence, which must always be regulated by the particular rules of that tribunal to which a plaintiff applies himself for relief. A bill of exchange is the same thing in England and in France, but in the one the protest is sufficient evidence of the bill; in the other, the bill must be shewn itself.

*101]   *Upon the whole, I am fully satisfied, that as the plaintiffs gave no sufficient evidence of payment to the last indorsee, they are not entitled to a verdict.

Judgment for the defendant, as in a case of nonsuit.

Distinguished in 15 Pa., 270 from cases in which a note or bill is endorsed in blank.
Cited in 9 Watts, 278.