## Weakly *against* Bell & Sterling.

In an action by an endorsee against an endorser, it is not necessary that the plaintiff should prove either the intermediate or prior endorsements, to enable him to give the note in evidence to the jury.

The defendant's admission of his endorsement would operate as an admission of the signatures of the maker and of all prior endorsers; and it would bind him even if the note and the prior endorsements had been forged.

A notice of protest sent through the medium of the post office is sufficient to charge the endorser, but the fact of putting the letter into the post office must be positively proved, and without such proof it is error in the court to submit it to the jury.

A notice of protest sent by mail and directed to the town, which is the seat of justice of the county in which the endorser resides, is sufficient, although it be proved that there was a post office nearer to, and within a short distance of his residence and where he usually got his letters.

The taking of a new note of equal degree, either from the debtor himself or from a stranger, at the instance of the debtor, is not an extinguishment of the first note, nor will it release any endorser of the same, unless the holder agreed to accept the new note in satisfaction, or to give time for the payment of the first note.

ERROR to the common pleas of *Cumberland* county.

This was an action of debt by Bell & Sterling against James Weakly, founded on a promissory note, dated the 8th of October 1821, for 270 dollars, at three months, drawn by Gray & Cauffman to Richard H Hall, payable at the Carlisle Bank, endorsed " R. H. Hall, James Weakly, R. H. Hall, again, Bell & Sterling, and Bell & Horner."

The handwriting of the defendant, James Weakly, having been admitted, the plaintiff offered the note in evidence, to which the defendant objected: 1st. Without proof of the handwriting of the other endorsers, no title to the note is shown to be in the plaintiffs. 2dly. The note offered is not the one described in the statement, there being other endorsers on it than those mentioned.  The court overruled the objections and sealed a bill of exceptions.  The certificate of protest was thus: " I left notice of the non-payment thereof at the post office in Carlisle, one directed to I. Andrews, Esquire, Cashier, Philadelphia; one for R. H. Hall, and one for Bell & Sterling, same place; one for Bell & Horner, and one for James Weakly with this protest."  The notary testified that the notices were all enclosed in one and directed to I. Andrews, Cashier, Philadelphia.

The plaintiffs then offered in evidence the deposition of James Heli, which contained this clause: "On the 17th of January 1832, he caused to be put into the post office, at the request of Bell &

[Weakly v. Bell & Sterling.]

Sterling at Philadelphia, a letter from the said Bell & Sterling to James Weakly, directed to him at 'Walnut Bottom, near Carlisle, Pa.,' a copy of which is now taken from the letter book and attached to this deposition. That to the best of deponent's knowledge this letter was put into the post office, for he is not aware of any neglect having ever occurred in the store of this kind. It was the same day they received notice."

This part of the deposition was objected to as insufficient evidence of notice; and to support the objection the defendant proved that there were two other James Weaklys in Cumberland county, and nearer to Carlisle than the defendant, who resided ten miles off, and had a post office called "Dickinson" within one mile of his residence and on the Walnut Bottom road; that there was no post office called "Walnut Bottom." The court overruled the objections and sealed a bill of exceptions.

The defendant then gave in evidence two notes of John Gray to Bell & Sterling, the plaintiffs, dated the 15th of January 1833, for 331 dollars 61 cents each, at fifteen and thirty days; and John Gray being sworn as a witness, said that these notes were given for the note on which this suit was brought and others, and that, when given, the plaintiffs had agreed to give up the first notes, but after they obtained the notes they refused to give the others up, and he did not insist upon it, because he was from home and was afraid of being arrested. Other witnesses, who were present at the transaction, testified that the agreement was that the second notes were taken as collateral security, and not in extinguishment of the notes of Gray & Cauffman.

The defendant requested the court to charge the jury upon the following points:

1. If the jury believe that the note of Gray & Cauffman, on which suit is brought, became due on the 11th of January 1832, and afterwards, 15th of January 1833, Bell & Sterling took two other notes from Gray for this note, together with another, and a debt of 85 dollars, due by Gray & Cauffman, with which the endorsers had nothing to do, and made those notes payable at future days, and this suit was not brought till August term 1836, the plaintiffs cannot recover in this suit.

2. If the facts above stated be true, and the jury believe that Gray & Cauffman had property during the whole winter of 1832, 1833, and summer of 1833, out of which the money might have been made, the plaintiff cannot recover in this suit.

3. If the jury believe that Bell & Sterling endorsed the note on which suit is brought, to Bell and Horner, who endorsed the same to J. Andrews, who sent the same to the Carlisle bank for collection, where the same was protested, as certified by the notary public, and returned to J. Andrews, cashier: that the legal title to the said note thereby vested in Bell & Horner, or in J. Andrews, and therefore the plaintiff cannot recover in this suit withot proof

[Weakly v. Bell & Sterling.]

that Bell and Sterling have paid the money to Bell & Horner, or J. Andrews.

4. If the jury believe that defendant resided within half a mile of a regularly established post office called "Dickinson," on the 17th of January 1832: that the notice of protest sent to him, directed to Walnut Bottom, near Carlisle, the said Carlisle being at the time a regularly established post office, ten miles from where James Weakly resided, and that there were two other James Weaklys living near to Carlisle, one four and the other five miles from it, that it is not such a notice as the law requires to make an endorser liable, particularly if no notice has been given to defendant to produce the letter, that he might make his answer to such call.

5. The evidence of the fact, that a notice was given to James Wheatly, is not legal evidence, the proof not having been made by the person who put the letter in the post office, if such letter ever was put in.

Whereupon the court charged the jury as follows:

First and second points read. If these are the facts, this would be the law. This seems to constitute a prominent part of the defence; it should be inquired into by the jury with care. The original note on which this suit is brought, was given by Gray & Cauffman. It bound them jointly and severally. It had two endorsers upon it, R. H. Hall and James Weakly. It fell due in January 1832, and was protested for non-payment. These positions are not disputed. But it is said that in January 1833, a year after the protest, the two other notes referred to were taken by Bell & Sterling for the same debt. Now the point for inquiry is, were these latter notes taken by Bell & Sterling from John Gray in lieu of the first—in substitution of it? or were the latter notes taken as a collateral security—an additional means of obtaining the money. In the one case, they would defeat the plaintiff's right: in the other, not. Where a man holds two distinct securities for the same debt, he may sue on either or on both, until he gets satisfaction. John Gray stated, that in the first stipulation between him and Bell & Sterling, in Philadelphia, it was his understanding that he was to get up the old notes. That, as he understood it, was his agreement. Two witnesses (Heli and Horner), who say they were present, and who are represented by the testimony as of good character, state that the notes taken in 1833, were not in lieu of the present note, but were taken as a collateral security. John Gray also testifies, that when he had executed the two subsequent notes, Bell & Sterling then refused to give up the present one, but held it still, as a collateral security. That he objected to it, but it was insisted on by them, and he had to submit. Suppose all the witnesses equally credible, it is important for the jury to look to the circumstances stated, and which are not disputed. John Gray states that he and Cauffman owed the present note. He was in Philadelphia. It had been then due and under protest for a year. He says he was threatened by

[Weakly v. Bell & Sterling.]

Bell & Sterling with the sheriff—with being arrested in Philadelphia, and compelled there to answer. That he felt as if he was in a difficulty, and only assented to give the two notes referred to from the necessities of the case. He admits that he represented to the plaintiffs, in the interview between them, that he was a man of property; that upon the payment of all his debts he would have a large surplus left. He states that he did not like to have his notes protested: that he certainly would not if he could help it. The other witnesses say, he alleged he had never allowed a note of his to be protested. Is it more likely, under these circumstances, that the plaintiffs were seeking to strengthen their security, or were willing to release it? As a question of fact, is it more probable that the two witnesses are right in saying the notes taken were additional, collateral security, and not in substitution of the former, or that they were willing to release Cauffman, and Hall and Weakly, and to take Gray alone for the debt. As the evidence strikes my mind, it appears much more likely, from the admitted facts, that the plaintiffs were rather seeking to strengthen their security than to give up a part of it; and that very probably they abstained only from suing Gray at the time in the city, on his engagement to pay the debt in fifteen or thirty days. And if the jury find this to be so, from the evidence, and that this was a new additional security, it affords no defence to this action. The plaintiffs had a right, in such case, to retain them until satisfaction was obtained.

Third point. If the legal title to the note in question was in Bell & Horner when the suit was brought, or if it was not in the plaintiffs, of course they cannot recover. But we are to take the case as it appears from the whole of the evidence upon this trial. It is admitted that James Weakly endorsed the note, payable by Gray & Cauffman to Hall. Hall had endorsed it before him. The suit is brought by Bell & Sterling, as plaintiffs. They have declared upon the note as due to them as endorsee. They bring forward the note as theirs: they give it in evidence. They disclaim the subsequent endorsements, and declined giving them in evidence, stating that they had the right to strike them out. We think we may consider them as stricken out, as the plaintiffs, as holders of the notes, have the entire controul of them. It is not necessary to prove the delivery of the note to Bell & Sterling. The original payee having endorsed it, by merely writing his name on the back, and James Weakly having added his general endorsement, the plaintiffs might have filled up the endorsement, making it payable to them. This was its legal import, and it was not necessary it should be so filled up. Bell & Sterling, as holders of the note, had the right to pass over intermediate endorsements between Weakly and them, if there was no injustice or impropriety appearing to arise from such a proceeding. If these are the facts, there is nothing in the law to defeat plaintiffs right to recover under this point.

Fourth and fifth points read. We cannot charge the jury that

the circumstances referred to in these two points are, in law, a bar to the present suit. The facts referred to are selected from others in evidence, and only present a part of the case.

The charge gives a statement of the law in the city, its strictness, &c., and says, " such is not the law in the country: explains the object of notice, &c. In the country it is mainly a question of fact, and asks, was there unnecessary delay or neglect? If not, you have a right to conclude, in law, that such notice would be enough. But it is objected, there is no positive proof of the notice being *put into the post office* by the plaintiffs, and also, that if so, it was not directed to the right office. I see nothing available in either of these objections. The note was dated at Carlisle, payable at Carlisle Bank. James Weakly lived on the Walnut Bottom road, in this county. The letter was addressed to him, " Walnut Bottom, near Carlisle." This seems to be sufficiently accurate. There is no mistake in it. I do not think the fact of the post office being in Dickinson township, nearer to him, can be considered as fatal to the claim, &c.

Errors assigned.

1. In admitting the note and endorsements.

2. In admitting the deposition of Heli.

3. In their answer to defendant's 1st and 2d points and all they said on the subject of them.

4. In their answer to defendant's 3d point.

5. In their answer to defendant's 4th point.

6. In their answer to defendant's 5th point.

*Watts* and *Alexander,* for plaintiff in error, on the subject of notice of protest, cited 15 *Eng. Com. Law Rep.* 125; *Peake's N. P. Cas.* 186; *Chit. on Bills* (8 *Ed. Am.*) 511; 16 *Law Lib.* 156. On the effect of taking the new notes as regards the endorser of the old ones, 5 *Whart. Dig.* 74, *Pl.* 7 & 8; 3 *Conn. Rep.* 106; 2 *Miles* 301; 2 *Johns. Chan.* 560; 16 *John.* 70.

*Graham* and *Biddle, contra,* on the first point cited, 1 *Yeates* 531; 4 *Dall.* 163; 7 *Serg. & Rawle* 327; and on the second point, 1 *Law Lib.* 79; 11 *Serg. & Rawle* 181; 8 *Eng. Com. Law Rep.* 11; 4 *Wash. C. C. Rep.* 308; 4 *Watts* 378; *Chit. on Bills* 442; 8 *East* 576.

The opinion of the court was delivered by

KENNEDY, J.—The first error assigned is an exception to the opinion of the court below, admitting the note, with some of the endorsements thereon, to be read in evidence to the jury, without proof having been first made, that all the endorsements were true. It certainly was not requisite to make proof of all the endorsements as they appeared on the notes, to entitle the plaintiffs below to give it in evidence to the jury, unless they had been averred in the declaration to have been made, which does not appear to be the case;

IX.—Y*

[Weakly v. Bell & Sterling.]

nor yet to entitle them to recover the amount of it.   Proof that the note was endorsed by the defendant below to the plaintiffs, if he were their immediate endorser, or if there were an intermediate endorser, and it be stated in the declaration, then, perhaps, also of such endorsement, was all that was necessary to give the plaintiffs a right to have the note read in evidence to the jury.   But if such intermediate endorsement be omitted in the declaration, the plaintiffs had a right to strike it out on the trial, as the first endorsement was in blank, and to proceed as if it had never been on the note.  Cooper *v.* Lindo, *B. R.* 3 *Selw.* 4th edit. 356, note *k*; Bosanquet *v.* Anderson, 6 *Esp.* 43; Sidford *v.* Chambers, 1 *Stark.* 326; Walwyn *v.* St. Quintin, *B. & P.* 658; Charters *v.* Bell, 4 *Esp.* 210; Smith *v.* Chester, 1 *Term Rep.* 654; Morris *v.* Freeman, 1 *Dall.* 193; Craig *v.* Broaz, 1 *Peters* 171.   The endorsement of the defendant below, was admitted to have been made by him, which was the very best proof of the fact, that it was susceptible of, and of course rendered any other or further proof thereof unnecessary.   His endorsement, therefor, being thus established, was sufficient not only to bind him, even if the note and the prior endorsements thereon had been forged, but was in effect an admission of the handwriting of the drawer of the note, and all prior endorsements thereon.  Lambert *v.* Pack, 1 *Salk.* 127, 1 *Ld. Raym.* 443; 12 *Mod.* 244; *Holt* 117; *S. C.* Free *v.* Hawkins, *Holt N. P. C.* 550; Critchlow *v.* Parry, 2 *Camp.* 182; Charters *v.* Bell, 4 *Esp.* 210.   And as to the interest of the plaintiffs below in the note, at the time of the institution and trial of the action; their having possession of it was *prima facie* evidence of their right to demand payment from the defendant.   It is true that the plaintiffs, before the note became payable, being holders of it, passed it away by endorsement to Horner & Wilson, and they to Mr Andrews, who transmitted it to the Carlisle Bank for collection, where it was protested at maturity for non-payment; but the endorsements upon it being in *blank*, and the plaintiffs afterwards having obtained the possession again, was *prima facie* evidence that they had paid and taken it up. Gorguat *v.* M'Carty, 2 *Dall.* 144; *S. C.* 1 *Yeates* 94; Pigot *v.* Clark, 1 *Salk.* 126; 12 *Mod.* 193; Norris *v.* Badger, 6 *Cowen* 429; Ellsworth *v.* Brekier, 11 *Pick.* 316; Lonsdale *v.* Brown, 3 *Wash. C. C. R.* 404.   We therefore think that the court below, were right in permitting the note, with the endorsement of the defendant, to be read in evidence to the jury.

It will be sufficient to remark here, in answer to the fourth error assigned, that the last position laid down above, and the authorities cited in support thereof, show clearly that it cannot be sustained.

The second error assigned is also an exception to the opinion of the court, admitting the deposition of James Heli, as evidence to prove, that a notice was put into the post office, addressed to the defendant, advising him that the note had been duly protested for non-payment.   The first ground of objection to this deposition, as being given in evidence for such purpose, is the only one which can

[Weakly v. Bell & Sterling.]

be regarded as having any weight. It is this, that the deponent, from what he has testified to on the subject, shows, in effect, that he neither put the notice into the post office himself, nor did he see it done, but thinks it was done, because he knows that such notice was made out, and left for or given in charge, as may be inferred, to one in the store, whose business, it probably was to take the letters thence and put them into the post office; and that he was not aware that any neglect on the part of such person to do so had ever occurred. Notice sent by the post, properly directed, is sufficient, though, the letter containing it should miscarry. Esdaile *v.* Sowerby, 11 *East* 117; Saunderson *v.* Judge, 2 *H. Bl.* 509; Dobree *v.* Eastwood, 3 *Car. & P.* 250; Smith *v.* Bank of Washington, 5 *Serg. & Rawle* 322; Smyth *v.* Hawthorn, 3 *Rawle* 355. But it must be proved *certainly* and *distinctly* that the letter was put into the receiving house or post office. Scott *v.* Lifford, 1 *Campb.* 246; 9 *East* 347: Smith *v.* Mullet, 2 *Campb.* 208; Hilton *v.* Fairclough, *Ibid.* 633; Dobree *v.* Eastwood, 3 *Car. & P.* 250. And proof of the delivery of it to a bellman in the street, will not be sufficient. Hawkins *v.* Rutt, *Peake's Rep.* 186; *Roscoe on Bills* 206. Nor will it be sufficient for the witness, called to prove the notice, to swear that he either put the letter into the post office himself, or delivered it to another clerk for that purpose; he must swear *positively*, and not doubtfully, to his having put it in himself. Hawkes *v.* Salter, 4 *Bing.* 715; *S. C.* 15 *Eng. Com. Law Rep.* 125. It has, however, been said, if a porter be called, and he says, that although he has no recollection of the letter in question, yet that he invariably carried to the post office all the letters found on his master's table; and another witness prove that a particular letter, giving notice, was so left, that may suffice. Hetherington *v.* Kemp, 4 *Campb.* 192; *Chitty on Bills*, 8th American ed. from the 8th London ed. 511–12. But evidence short of this, to prove notice, ought not to be received; or if received, the court ought not to leave the fact, of notice having been given upon it to the jury, to be decided by them; or if the court does so it will be error. In the case under consideration, then, it is manifest, that the evidence offered and received, fell greatly short of any thing that has ever been ruled or said to be sufficient; and certainly did not go to show that the notice spoken of had ever been put into the post office. The deponent, by whose evidence the plaintiffs below attempted to establish the fact, that notice was given, shows plainly that he did not put the letter containing it, into the post office, nor yet see it done; so that there was really no proof whatever given of the letter having been put into the post office at any time. We therefore think, that that part of Heli's deposition, which relates to this particular ought to have been suppressed and not given in evidence: or otherwise when received, that the court ought to have directed the jury, positively to find a verdict for the defendant below, because no evidence had been given, tending to prove that

notice of non-payment of the note, in suit, had been given to the defendant.

The third error, which is the next in order, is an exception to the answers of the court, given to the first and second points, submitted by the counsel for the defendant below. The only question, seeming to arise out of these points, which can be regarded as at all material to the defendant below is, whether taking, about a year after the note in suit had become payable, and been protested for non-payment, two new notes drawn by Gray, one of the drawers of the first, as a collateral security, for the payment of the debt mentioned in the first note, including also an additional sum of money owing by the drawers of the first to the plaintiffs, at fifteen and thirty days thereafter, without any agreement on the part of the plaintiffs below to give time for payment of the first note, released the defendant below from his liability as the endorser thereof.

The evidence given on the part of the plaintiffs below, went to show clearly that they agreed to accept of the new notes as collateral security merely, and that the old were not to be delivered up, but retained by them. On the other hand again, the evidence for the defendant tended to prove distinctly, that the new notes were given in satisfaction of the old; and that it was the understanding, that the old should, upon the giving of the new, be delivered up; but that the plaintiffs, upon receiving the new, refused to do this. The court upon this evidence submitted it to the jury, as a question of fact, to be decided by them, whether the new notes were given as collateral security only for the debt mentioned in the old, or in satisfaction thereof. The jury, by finding for the plaintiffs below, have decided that the new notes were given as collateral security merely. Upon this subject, the general rule seems to be, that if one indebted to another by simple contract, give his creditor a promissory note, drawn by himself, for the same amount, without any new consideration, the new note shall not be deemed a satisfaction of the original debt, unless so intended and accepted by the creditor. Hart *v.* Bollar, 15 *Serg. & Rawle* 162; Roberts *v.* Gallagher, 2 *Wash. C. C. R.* 191. And most clearly all the authorities go to show that, at law, accepting of a security of equal degree, either from the debtor himself with or without a surety, or from a stranger alone, at the instance of the debtor, is no extinguishment of the first debt; as where a second bond is given to the obligee; for one bond can not determine the duty of another. *Cro. Eliz.* 304, 716, 727; *Brownl.* 74; *Cro. Car.* 85–6; 1 *Burr.* 9; 1 *Stran.* 427; *Brownl.* 47, 71; *Hob.* 68–9; 1 *Mod.* 225; 2 *Ibid.* 136; *Cro. Jac.* 579; 3 *Lev.* 55; Hamilton *v.* Calender's Executors, 1 *Dall.* 420. In Lovelace and Wife *v.* Cocket, *Hob.* 63–9; *S. C. Brownl.* 47, being an action of debt upon a bond given to the wife when sole, the defendant pleaded, that at the day of payment, he and his *son,* naming him, gave a new bond to the wife, who was still sole,

for the payment of the same money on a future day, in satisfaction of the first bond, which was so accepted; whereupon the plaintiff demurred; and the court gave judgment thereon in their favour. Norwood *v.* Grype, *Cro. Eliz.* 727, is also to the same effect. And in Hawes *v.* Birch, *Brownl.* 71, the action being debt upon a bond, the defendant pleaded that a stranger, naming him, at the defendant's request, on the day the bond in suit became payable, made an obligation to the plaintiffs in lieu of the first debt; and it was adjudged by the whole court, that the plea was naught. And it would seem as if the court thought the new bond rather of less force as a plea for the defendant, than if it had been given by himself, for they say, "being done by a stranger, was by no means good." Neither could the defendant, I apprehend, even in equity, claim upon any principle of justice to be relieved from the first bond, without showing a *distinct agreement*, that the second bond was given and accepted in discharge of the first: but if that could be made to appear, I do not see any reason why the defendant should not have the benefit of such agreement. Roberts *v.* Gallagher, 2 *Wash. C. C. R.* 191.

In Day *et al. v.* Leal *et al.*, 14 *Johns.* 404, it was held that a *collateral* security, even of a higher nature, as a bond and warrant of attorney, on which judgment is entered, does not extinguish the original contract, as long as it remains unsatisfied. There the action was brought to recover the amount of two promissory notes; after they had become payable the bond and warrant of attorney were given by one of the drawers of the notes, to secure the payment of the same debt mentioned in them, and an *additional* sum of money owing to the plaintiffs by the obligor and another person, not one of the drawers of the notes. And the court seemed to think that the two circumstances, to wit: that of the bond and warrant being given by *one* only of the drawers, and the *additional* sum of money being included in it, tended strongly to show that the bond was intended to be only a *collateral* security. The like circumstances exist in the case before us, but with the addition of another circumstance, making the case still more favourable for the plaintiffs, which is, that both securities are of equal degree. This court also held, in the case of Wallace *v.* Fairman, 4 *Watts* 378, that a specialty or single bill taken by the creditor of a firm from one of the partners thereof, for the payment of the debt owing to him by the firm, for which he gave, at the time, a receipt, expressing that the specialty, "when paid," would be in full of his claim against the firm, and upon which he afterwards obtained a judgment, was no extinguishment of the original claim, because it appeared to have been taken as a concurrent and additional security. But let us turn to cases resembling the present so closely, that they cannot in principle be well distinguished from it, and see what the rule is which has been applied in deciding them. In Pring *v.* Clarkson, 1 *Barn. & Cress.* 14; *S. C.* 8 *Eng. Com. Law Rep.* 10, it

was ruled that the acceptance of a new bill from the acceptor of the first, after the latter had become payable, for the payment of the same debt at a future day, could only be considered a collateral security, and therefore did not amount to or imply an agreement to give time to the acceptor, and consequently did not release the other parties to the bill first given. Abbot, C. J., in pronouncing the opinion of the court, says, "In no case has it been said that taking a *collateral* security from the acceptor shall have the effect of giving time to him, and consequently of releasing the other parties to the first bill." Mr Chitty, in his treatise on bills of exchange 442, (8th American ed., from the 8th Lond. ed.) though he admits the effect of this case to be, that the mere taking of fresh security from the acceptor for the payment of the money at a future day, *without a bargain to give time,* will not discharge the drawer or other parties to the bill; yet he makes a *quære,* whether the mere taking or receiving further security, payable at a future day, would not, in general, imply an agreement to wait till it should become due. But in the previous case of Bedford v. Deakin, Bickley and Hickman, 2 *Stark. Rep.* 178, where the three defendants, when partners, drew the bill upon which the suit was brought, but subsequently having dissolved the partnership, and Hickman having become bankrupt, Bickley wishing an arrangement to be made as to the securities which the plaintiff held from the three defendants, proposed to give his own notes as a security, payable at the respective periods of four, eight, and twelve months. The plaintiff agreed to accept of the new security thus offered, reserving, however, to himself the security which he held from the three defendants. The new notes were accordingly drawn by Bickley and a *surety* of the name of Rushburg, for the original sum and interest calculated up to the times when the respective payments were to be made and delivered to the plaintiff, he retaining the first bill in his possession. Lord Ellenborough held that the original liability of the defendants was not thereby altered; and distinguished this case from Evans v. Drummond, 4 *Esp.* 89, by saying that "the separate note of the partner there was taken as a *substitute* and *in exchange* for the security which had been given by the partners; but here the notes, he said, were taken as a mere *collateral* security. If there had been an *agreement to postpone the payment of the original debt,* without the consent of Deakin, I should have assented to the objection; but there was no such agreement." He also laid stress on the circumstance that the original security was not delivered up, which he said distinguished the case from all the cases cited. Mr Justice Bailey also, without any seeming disapprobation, in the last edition of his treatise on bills, see 2d American ed., (Boston, 1836,) from the 5th Lond. ed. 369, lays it down, from the case of Pring v. Clarkson, that "taking a fresh bill from the acceptor as a *collateral* security, will not discharge the drawer unless there be a bargain for time." In conformity to this principle, it was decided in Ripley v.

Greenleaf, 2 *Verm. Rep.* 129, that taking a new note on time, as a security for the payment of the money mentioned in the first note, does not discharge the endorser, unless there be an *agreement not to sue* the maker on the first note. Hence it appears that taking a new note for the same debt mentioned in the old, without any agreement to give time to the drawer, or to deliver up the old note to him, or that the new shall be taken in satisfaction of the old note, has ever been considered a mere collateral security, which does not affect or alter the original liabilities of the parties on the old note in any respect whatever. The case also of Gould *v.* Robson may be considered as having been decided with a view to the recognition of this principle, though it may be questionable whether the court did not go too far there in deciding that there was an agreement to give time. The holder of the bill, upon receiving part of it at maturity, took a second bill for the residue, payable at a future day, *agreeing to hold the original bill* as a security *until the second should become payable;* and the court were of opinion that the agreement to hold the original bill until the second should become payable, amounted to an agreement, on the part of the holder, not to sue on the original bill until the second should become payable, and consequently the drawer was thereby released. We, therefore, conceive that the third error cannot be sustained.

The fourth error having been noticed and settled at the conclusion of what was said on the first error, we come now to the fifth error. It is an exception to the answer of the court to the fourth point, submitted by the counsel of the defendant below. The letter of notice to the defendant, advising him of the non-payment of the note, was proved to have been directed to him at Walnut Bottom, near Carlisle, which, it would seem, was the place of his residence; but it was shown that, although there was a post office in Carlisle, it was some nine or ten miles from Walnut Bottom, the place where the defendant resided; and that there was a post office called "Dickinson" within half a mile of his residence. The counsel of the defendant below, therefore, requested the court, in the fourth point, to instruct the jury that, if the letter was put into the post office at all at Philadelphia, it must have been mailed, from the direction on it, for the post office at Carlisle, where the defendant would not look for it or be likely to receive it, instead of Dickinson post office, where he would have received it with some certainty, as the latter was the post office at which he generally received letters addressed to and intended for him. We are not prepared, however, to say that the court erred in refusing to give the instruction here asked for; because, at the distance of one hundred and thirty miles from Philadelphia, it may be impracticable to ascertain by inquiry in the latter place, whether there be a post office nearer to the residence of an individual who resides in the county, than that which is located in the town which is the seat of justice in the county wherein he resides. And if it were to be decided that the letter

must be addressed, in all cases, so that it shall be sent to the nearest post office to the residence of the defendant, it might subject the plaintiff to the expense and inconvenience of sending a special messenger a distance of several hundred miles in order to give the defendant personal notice, or to ascertain the name of the nearest post office to him, and have the letter forwarded by mail to it. This would seem to be more than ought to be required; because, if a notice should be sent to the post office of a county town, addressed to a person as residing at a particular place in the county, as well known in the county town as Walnut Bottom is in Carlisle, the postmaster receiving the letter containing the notice, at his office in the county town, would doubtless, as it would be his duty, forward it to the post office nearest to such person's residence, that he might receive it as early as possible. The circumstance of there being two other James Weaklys does not seem to raise any material objection to the direction of the letter, for .it seems that the defendant resided much nearer to the Walnut Bottom than either of them, and therefore better suited the direction of the letter.

As to the sixth error, which is the only remaining one, it is sufficient to observe that it has been sufficiently answered in the discussion of the second error.

Judgment reversed, and a *venire de novo* awarded.