WALTER WHEELER *v.* THEODORE SCHROEDER.

Where the written contract, under which work is done or materials are furnished at a stipulated price provides, that such price shall "be payable, when the job is completed, in satisfactory six months' paper, interest added," the four months, within which legal process is to be commenced, under the 4th section of "the mechanics' lien law," begins to run from the maturity of the six months' paper provided for by the contract, as the time of payment under the same, and not from the completion of the job.

Notwithstanding the non-delivery of the six months' paper under such a contract, the right to sue for the price of the labor and materials is suspended until the period is reached at which the paper would have come to maturity, if delivered; the remedy in the meantime being confined to a special action of assumpsit for the non-delivery of the paper.

The delivery and receipt of the •employer's notes or of his draft, as the "satisfactory paper" under such a contract, is not final payment of the price stipulated in it, but conditional only upon the paper's being paid at maturity; and does not therefore discharge the mechanics' lien, although a receipt be given by him for the paper, as "in full to date;" proof of the clear intent of parties to that effect being necessary in such case, to make the paper final payment of the contract, so as to discharge the lien given to secure the employer's promise to pay in accordance with it.

It is the duty of the court, in a case calling for it, to instruct the jury what inferences may be legally drawn from the words of a written contract, or of receipts coupled with the conduct of the parties in exposition of them, upon the question, whether the delivery of paper under the contract was intended by the parties to be final or conditional payment only of the same: the legal sufficiency of proof being for the court—the moral weight of legally sufficient proof being for the jury.

Where two or more grounds of action or of defence are taken under the same issue, it is proper for the court, in its discretion, to direct the jury specially to declare upon what ground their verdict is found; in order to ascertain, whether a particular direction of the court, in matter of law, affected or not the verdict.

A misrecital of the testimony by a judge in his summing up to the jury, is no ground of new trial; such summing up being an appeal to their recollection. It is the right of counsel, in a proper manner and at a proper time, to correct such mistake by calling the attention of the judge to it, in the presence of the jury, before the cause is finally committed to them; and a failure then to make the correction, is a waiver of all right to make it thereafter.

PETITION under "the mechanics' lien law," filed by the builder of a new garancine building and fixtures for the respondent's print-works, in Smithfield, known as the Manchester print-works, to enforce a lien upon said building and the lot of land covered by it, for the sum of $742.89, claimed to be due by the petitioner for labor done and materials furnished by the petitioner, in the construction of the building, under a written contract made with the respondent.

At the trial before the chief justice, sitting with a jury, upon

the question of lien or no lien, two principal grounds of defence were taken by the respondent. *First*, that the petitioner had lost the lien to which he might have entitled himself for his work and materials, by his laches in not commencing legal process, for the enforcing the same, within four months from the time that any payment became due upon the contract; and *second*, that under the proof, payment had been made by the respondent, in the sense of the contract, and that by virtue thereof the lien had been discharged.

By the contract produced at the trial, it appeared, that the whole job, including labor and materials, was to be completed in accordance with the specifications, for the sum of $1,399, " payable," to quote the language of the contract, " when the job is completed, in satisfactory six months' paper, interest added." It further appeared, that under this stipulation for " satisfactory six months' paper," neither the petitioner had claimed, nor the respondent offered to him, other paper than that upon which the respondent was liable, either as drawer or promisor ; and that the paper actually delivered and received under the contract, was a draft drawn by the respondent upon Messrs. Larned & Carr and by them accepted, payable in six months from the 25th day of August, 1854, for the sum of $631.38, and which appeared by the receipt of the petitioner, produced by the respondent, to have been delivered on the 20th of the October following, and that the balance, or nearly the balance, of the contract price, was settled by three notes of the respondent, at ninety days, for sums amounting in the aggregate to $761.17, and delivered to the petitioner, as appeared by his receipt produced, on the 13th day of December, 1854. The receipt for the draft expressed that the petitioner had received " Larned & Carr's acceptance of his (respondent's) draft, at six months from August 25, 1854, for $630.38, on account," and the receipt for the notes expressed, that the respondent had received " from Theodore Schroeder, his notes, at ninety days date, for $125.00, $150.16, and $486.01 = $761.17, *in full to date.*"

Besides the questions of law ruled at the trial, the main question of fact, was, when in truth the job was completed, for the

purpose of ascertaining when the paper was to be delivered, under the contract; and when, if such delivery was to be construed as the time of payment under the statute, (within four months from which legal process should be commenced,) the four months began to run. It appeared from the town clerk's certificate, that the legal process contemplated by the act, was commenced on the 27th day of March, 1855; and in order that the petitioner might avail himself of the finding of the jury in this respect, independently of the correctness of the ruling of the judge, as to what was payment in the sense of the 4th section of the act, under this contract, the jury were instructed to find, specially, whether the job was completed before, or after the 27th of November, 1854, that is, whether within or beyond four months from the time when legal process was commenced to enforce the lien. Under the direction of the judge, the jury returned a verdict, "that the petitioner had a lien upon the building mentioned in his petition, and on the interest of Theodore Schroeder in the land on which the same stands, for his account, and that the job was not completed until after the 27th day of November, A. D. 1854."

The respondent now moved for a new trial, for misdirection of the jury in matter of law, the special grounds of which sufficiently appear in the opinion of the court.

*Cozzens*, for the motion.

*Weeden*, against it.

AMES, C. J. The first cause for new trial alleged in the motion, is, that the presiding judge instructed the jury, "that under the 4th section of the lien act, the time that any payment on the contract (for labor or materials) shall become due and payable, is the time that the note stipulated to be given by the contract in payment, was to become due and payable; and not the time when such note was to be delivered to the contractor; unless it appeared from the contract, that the delivery of the note, as the note of a third person, for instance, was to be taken by the contractor by way of exchange for his labor and materials, and in release of the obligation to pay the party to whom, under the contract, the labor and materials were furnished; and that in *this* case it was sufficient, if the petitioner filed his

account in the town clerk's office within four months from the time when, any of the notes or drafts to be delivered to him, were, by the contract, to become due and payable." As there was no question but that legal process was commenced within four months of the *maturity* of the paper stipulated for in the contract, this construction of the 4th section of the act in application to the particular contract, was tantamount to instructing the jury, upon *this ground,* to find, that legal process was commenced within due time.

This ruling, so far as the construction of the 4th section of the lien act is involved in it, is certainly correct. The only sensible meaning which can be put upon this section of the act, is, that the mechanic is to have four months after any default of payment stipulated to be made in the contract, within which to commence operations to enforce the security given to him by law, to assure its fulfilment. As long as the other party is in no default of payment, under the contract, there is no need on the part of the mechanic to proceed, nor can any *laches* be imputed to him for not proceeding. Unless then, we intend to deny that the taking the stipulated six months paper in payment, suspends the right of action until the paper becomes due, and default is made in payment—said by Lord Kenyon, as long ago as the case of *Stedman* v. *Gooch,* 1 Esp. 4, to be clear law— and as thus stated, approved by Baron Parke in *Price* v. *Price,* 16 Mees. & Welsb. 231, 239, it would be difficult to choose a position from which to assail so obvious a construction.

It is no answer to say, as was said at the hearing, that the right to sue, would under such a contract accrue, if the satisfactory paper on time was *not* delivered according to the contract, when the work was completed. Even admit that this would be so, it is obvious, that this answer, as applied to the present subject of our inquiry, would lie open to the objection, that the action would be brought in such case to enforce, not a payment provided by the contract—but a right to payment, given by the law as a penalty, for not delivering at the time agreed upon, the stipulated security. The better reply is, however, that notwithstanding the non-delivery of the stipulated paper on time, the right to sue for the price of labor or goods rendered or sold

upon such an agreed credit, is suspended until the period of time is reached, at which the paper would have come to maturity, if delivered; the present remedy of the laborer or vendor being confined to a special action of assumpsit for the non-delivery of the paper. 2 Am. Leading Cases, Hare & Wallace's notes, 188, 189, and cases cited.

We do not, however, understand the learned counsel for the respondent seriously to deny that, in general, where a contract of this sort stipulates that the mechanic, when his work is completed, is to receive instead of money, paper on time, that the payment, within the meaning of the statute, falls due, until the maturity of the paper; or to deny that, in such cases, the mechanic has his four months within which to commence legal process, computing from the time of such maturity, instead of from the completion of the work. The point insisted upon by the learned counsel is, rather, that however this may be in general, there are special words in the contract under consideration, which take it out of the general rule in this respect, and make, by force of the contract of the parties, the delivery of the satisfactory paper, payment, in the sense of *final* payment—extinguishing all right of action upon the contract, instead of suspending it in the sense of *present* payment merely, until the maturity of the paper. In this aspect, his ground of argument upon this point connects itself with his objection to the ruling of the judge, specified in the motion, as the fourth cause why a new trial should be granted, to wit, in substance, that the judge instructed the jury that there was nothing in the language of the respondent's receipts for the draft and notes taken by him in payment, or in the stipulation of the contract, coupled with these, specifying the mode of payment, especially as explained by the conduct of the parties in giving and receiving a draft upon which the petitioner was liable as drawer, and his notes without guarantor or indorser, from which they should infer, that the draft or notes were taken by the petitioner in final discharge of the contract and of his lien for security of the same. In truth, as observed by the counsel for the respondent, the two objections cannot well be considered apart; for the argument shortly is, that the contract stipulated for payment " in satisfac-

tory six months' paper, interest added," and the receipts given
for paper to the amount of the contract conclusively show that,
the paper, whatever it was, having been received, as in compli-
ance with the contract, was *satisfactory as payment*, under the
contract.

It is obvious, that the whole question here is narrowed down
to the ascertainment of the meaning placed by the parties upon
the word " payable," in the terms of this contract, stipulating,
that the contract price, $1,399, was to be " payable, when the
job is completed, in satisfactory six months' paper, interest
added." There might be some difficulty in this question, if
the meaning of this word, when used with reference to the
taking of even the paper of a *third* person for a precedent debt,
but especially, when used in reference to the taking of the con-
tractor's own paper, or paper upon which he is liable, had not
received, in almost every commercial state and country of the
common law, the reasonable interpretation, that it is to be pre-
sumed to mean, that the note or bill of exchange, whether
given for a precedent debt or in a contemporaneous transaction,
is, in general, to *be* payment only, if paid at maturity. Mere
promises to pay have no such value in the eye of the law, as to
merge a prior obligation, or to constitute an equivalent for the
lawful currency in payment, unless made to do so by an express
contract, operating by way of an accord and satisfaction in the
one case, or by way of an agreed exchange of commodities, in
the other. So well understood was this, as the result of the
application of the principles of the old common law, that the
statute of 3 & 4 Anne, ch. 9, which assimilated promissory
notes to foreign bills of exchange in the quality of legal assign-
ability, from abundant caution, and to embody an important
principle of the law merchant, made, by its second section, the
receipt of a bill or note in satisfaction of a debt, *actual satisfac-
tion, if* the person receiving it did not take the due course to
obtain payment of the instrument, by endeavoring to get it
*accepted*, if a bill, and, whether note or bill, to get it *paid* at
maturity.

By a series of decisions, almost unbroken, in England, from
the days of Lord Holt, the legal presumption from the act of a

party in taking negotiable paper in payment of a debt, or for a thing sold, or from contracting so to take it, is, that he takes it not as actual payment, or actual satisfaction, but as mere present payment or satisfaction, to become actual payment or satisfaction only if paid at maturity. The same presumption prevails in the great commercial states of New York and Pennsylvania, and generally throughout the country; and if, as we know, a different notion is entertained upon this subject in two or three of the New England states, it can hardly be said to disturb the broad and constant current of authority. 2 Am. Lead. Cases, and Hare & Wallace's notes, 162 to 188, inclusive, and cases cited; Byles on Bills, (side,) 303, 304, 305, 306, &c. and notes. Upon questions of commercial law, we deem it of importance that the process of universal assimilation should be carried as far as possible—that, in other words, all peculiarities, calculated as they must be to lead to mistakes and misunderstandings, if not to positive frauds, in the wide intercourse of trade and commerce, should be avoided: and we feel no inclination to depart in the particular which we are now considering, from what we have understood to be, for some years past at least, the settled law of this state, and what is, at all events, the settled rule of commercial law under that general system which we are bound to administer. *Sweet & Carpenter* v. *James,* 2 R. I. Rep. 292, 293, 294, 296. But though the presumption in all cases, from the taking of a note or bill, upon which the party giving it is liable, even when expressed to be in payment, is, as above stated, yet proof that it was the clear and undoubted intention of the parties, that it should be given and received in extinction of the previously existing or contemporaneously arising liability, will overcome this presumption, and make the bill or note answer as an accord and satisfaction of the demand on account of which it is taken. 2 Am. Lead. Cas. Hare & Wallace's notes, 180, 181, and cases cited.

Is there any thing then, in this contract, beside the use of the word " payable," which shows, that the intention of the parties was, that the paper, to be delivered in payment at the completion of the job, should operate to extinguish the demand for labor, &c. and discharge the lien. It is argued, that the ex-

33 *

pression of the contract, that " the paper was to be *satisfactory*," and that the interest was to be added, making the paper equal to cash, as the common phrase is, is indicative of such an intention. But it is obvious, that the word " *satisfactory*," in the sentence relied on, is not used to express the effect of the delivery of the paper upon the demand for which it was to be taken, but only to indicate *the character* of the paper upon the credit of which the six months' time of payment was to be given. ..The intent of this requisition of the contract, seems to us perfectly satisfied by the obvious advantage, if not foreseen necessity, of the petitioner's having such paper as he could anticipate by discount, or negotiate, by way of exchange for his own liabilities. Neither do we see the bearing upon the intent of the parties, in the direction of our inquiry, of the stipulation that interest was to be added, in the paper to be given. It merely shows, that in the estimate of the parties, the contract price was adjusted to the cash value of the work and materials to be paid at the completion of the job; and that the respondent, was, upon that basis, to have the advantage of a six months' credit, paying the legally ascertainable value of it.

Had the contract stipulated that payment should be made in " satisfactory six months' paper, interest added, *without the name or indorsement of the petitioner thereon*," or words to that effect, then indeed the implication, by force of the last clause of the sentence, would have been, or at least might have been, entirely different. Byles on Bills, 229, 307, side, and chapter on Transfer, *passim*, 4th Am. from 6th Lond. ed. For this reason, attention was called at the trial to the conduct of the parties under the contract, in exposition of their meaning in the general phrase " satisfactory six months' paper." Admit, that the terms of designation were wide enough, as they certainly were, to embrace paper of the kind supposed—did the parties intend *that* kind of paper, or have it in their minds, at the time of using these words in their contract? Now, it was quite evident from the fact that the respondent never offered such paper, but, as the receipts showed, for about half the amount of the demand, *his* draft accepted by the drawees, and for the other half, *his* own promissory notes without guarantor or indorser, that no such

paper as that supposed was intended by the parties 'in this phrase of their contract, so far as proof upon such a subject could properly go. The fair inference as to what was intended by the contract in this respect, from what was actually done under it, is, that the paper spoken of was to be the respondent's own paper, with or without other names, such as he could give, and at all events, such as being capable of use, the other party ought in reason to be satisfied to accept. All this points to the continuing liability of the respondent, in some substantial form, for the work done for, and materials furnished to him by the petitioner, instead of to his release from all liability upon the giving of the stipulated paper. It leaves, therefore, in full vigor, the settled presumption of law in such a state of things, that the paper contracted to be given, and actually received, was not designed to be given or taken in accord and satisfaction of the original demand and in discharge of the lien which secured it, but only as conditional payment—that is, if paid at maturity, and not discharged by the act or laches of the holder.

The language of the receipts of the petitioner, prepared for him by the clerk of the respondent, are in accordance with this well-founded, settled, and equitable presumption of the law. The draft was simply acknowledged to have been received as " Larned & Carr's acceptance of *his* (the respondent's) draft at six months, &c. *on account;*" and the notes, which in amount balanced the account, are acknowledged to have been received, not as cash,—not in payment even,—but as the respondent's notes—specified, each, in date, amount, and time to run, " *in full;* " that is, as construed by the decisions, as well as by common use, to the full amount of the balance of the account.

There is another feature in this transaction, which has been construed by this court, in a case too in which the bill taken had been negotiated, to repel the inference, capable of being drawn from this last fact, that it was taken in final discharge of the demand, the amount of which it represented. There is a lien to be given up, granted by the statute to this petitioner as security for his original demand ; and we think that it would be greatly unreasonable to presume, without clear proof of an agreement to that effect, that either party to this contract in-

tended that the mere giving and receiving of a six months' draft, and more especially of the respondent's own promissory notes, was to have the effect of depriving the petitioner of the sure means provided by law to enable men in his condition to obtain the reward of their labor. If the consequence of such a waiver of security will *repel* the presumption of final payment, arising, as expressed in the opinion of the court, from the negotiation of the paper taken, though afterward returned upon the party taking it, according to the before cited case of *Sweet & Carpenter* v. *James*, 2 R. I. Rep. 294, 297, much more will it *support* and *strengthen* the acknowledged general presumption of law, that by stipulating to give and receive such paper, and by actually giving and receiving it, the parties intended no such waiver.

Some complaint was made at the hearing, and it is hinted at in the fourth exception, that the court instructed the jury, as to what inference they might or might not legally draw in regard to the effect of giving and receiving the designated paper, from the wording of the contract and of the receipts, and from the conduct of the parties in relation thereto, specified in that exception. If it were needed, full authority is found for such a course in the ruling of Lord *Holt*, in the leading case of *Ward* v. *Evans*, 2 Lord Raymond, 928, and of the supreme court of Pennsylvania, in the case of *Weakly* v. *Ball*, 9 Watts, 280, in the very matter to which the instructions objected to relate. But without this, the legal force and effect of the words in written business documents, and of the conduct of the parties in exposition of them—are so purely matters of law, that a judge would, in our opinion, fail in his duty, if he neglected to give it in charge to the jury, so far as was necessary for the proper decision of the case before them. Indeed, in general, whenever an inference is to be drawn by a jury from the proof of certain facts, it is the duty of the court to state to the jury, in a case calling for it, not only what facts were not sufficient legally to authorize the presumption, but what facts, if proved, will justify it. The failure to perform this last duty, in a case requiring it, was the very ground upon which the supreme court of the United States upon error, set aside the verdict, in *Lecraw* v. *Boston*, 17 Howard, 426, 436, and directed a *venire facias* to be awarded. The

legal sufficiency of proof, and the moral weight of legally suffi-
cient proof, are very distinct in legal idea.   The first lies within
the province of the court, the last within the province of the
jury.   For these reasons, we are of opinion, that there was no
misdirection in matter of law in the charge of the judge to the
jury, as set forth in the first cause in this motion for a new
trial; the portion of the charge in question, which relates to the
construction of the 4th section of the lien law, being, besides,
rendered of no importance to the verdict, by the special finding
of the jury, that the job was not completed under the contract,
until after the 27th day of November, 1854.

We are also of opinion, that there was no misdirection in
that portion of the charge, set forth in the first and fourth causes
alleged in this motion, which relates to the legal effect of the
giving of the drafts and notes under the contract, upon the
status of the petitioner's demand, under the lien law.

The second and third causes alleged in the motion were not
much relied on at the hearing.   The first consists of an objec-
tion to the instructions given by the judge presiding at the trial,
as to what facts the jury were entitled to consider in ascertain-
ing when the job was completed in accordance with the con-
tract, under a ruling called for by the counsel for the respondent.
The facts were certainly material to the special issue thus
made; and it was perfectly proper that the court should tell the
jury that they were entitled to consider and weigh them with
other facts relied upon by the *respondent*, which also related
to it.

*The third cause* set forth in the motion, was evidently founded
upon a misconception.   It objects, that the judge presiding at
the trial, in the course of his charge, whilst comparing the testi-
mony of the witness *Droun* with that of the witness, McCabe,
alleged by the counsel for the respondent to be directly in con-
flict, stated to the jury, that they were not precisely in conflict,
because the two witnesses swore to what was said and done on
*different* occasions—the one, at an interview between the witness
and the respondent, and the other, at an interview between the
witness and the deponent; and that nothing was said by the
witness at the latter interview as to what took place at the for-
mer.   Upon examination, this turns out to be true; but we

notice it merely for the sake of remarking, that had it been otherwise, it could have formed no ground for a new trial, if what the testimony really was were left to the jury, as, in the absence of proof to the contrary, it would be presumed to be. The recital of the testimony by the judge in his charge, is always an appeal to the recollection of the jury. If he should err, the counsel have the right, and should exercise it, in a proper manner and at a proper time, of correcting his error; and should do so before the cause is finally committed to the jury. An omission then to make the correction is a waiver of all right to make it thereafter.

Judgment must be entered on this verdict, and the case sent to a master to ascertain the amount of the lien claim due from the respondent to the petitioner, as well as the nature and amount of all other claims upon the property described in the petition, or any part of it, made by or belonging to any party to this proceeding,—the master to report the same, and the order in which, in equity and good conscience, they should be paid out of said property—as well as how much, if any, and what portions of said property, including the land described, subject to sale, shall be sold to satisfy such claims.