# Townsend *versus* Long.

1. Long sold his interest in a firm to his partner for $700, the partner to pay all the debts of the firm; the $700 being unpaid, the partner sold to Townsend, who, by parol, agreed to pay the amount due Long as the consideration. *Held,* that the promise was not within the Act of April 26th 1855, sect. 1 (Frauds), and Townsend was liable to Long on his promise.

2. The general rule is that a parol promise to pay the debt of another is within the statute where it is collateral to a continued liability of the original debtor.

3. If a parol promise be to pay absolutely or conditionally the debt of another, due or to become due on an existing contract, it is generally within the Statute of Frauds.

4. The consideration for the promise is important only where it is a transfer of the creditor's claim to the promissor, making the transaction a purchase, or where it is a transfer of a fund pledged, set apart as held for the payment of the debt.

November 16th, 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Washington county:* Of October and November Term 1874, No. 54.

George J. Long commenced an action of assumpsit, June 24th 1872, against John Townsend; the cause of action was on the following facts:—

Prior to the 29th of January 1870, the plaintiff and Joseph B. Vance and Joseph Rankin were in partnership in the furniture business; on that day, by agreement in writing, the plaintiff sold to Vance and Rankin all his interest in the concern, including the book accounts, they to pay all the debts that had been contracted during the partnership, and also to pay the plaintiff $700, as follows: $100 on the 1st of May 1870, and $600 in eighteen months from the date of the agreement. Vance and Rankin took possession in March 1870. Rankin went out of the business, leaving

Vance the sole owner, with the understanding that Vance was to pay all the claims. In April or May Vance sold to the defendant, who took possession, the debt to plaintiff from Vance and Rankin being unpaid; defendant afterwards paid the $100 due on the 1st of May 1870.

On the trial, January 27th 1874, before Acheson, P. J., Vance testified that the agreement of the sale to defendant was, that he was to take everything and pay all the debts of the concern. "Long's debt was spoken of—defendant agreed to pay it." Plaintiff was not present at this agreement. Vance and Rankin never paid plaintiff anything on their agreement.

Plaintiff testified himself, and called several other witnesses, who corroborated the testimony of Vance.

The defendant testified that he never agreed to pay the plaintiff, nor to pay any of the debts of the firm; he testified further in direct contradiction of the evidence for the plaintiff; other witnesses corroborated his testimony.

The following were points of the defendants with their answers:

1. Unless they are satisfied, from the evidence, that the defendant undertook, *at the time he entered into the contract with Vance,* to pay the plaintiff's claim, the plaintiff cannot recover, whatever may have been the consideration, the promise not being in writing.

Answer: "The jury must be satisfied that the defendant agreed to pay the plaintiff's claim at the time of his contract with Vance, as stated in this point; but it is not necessary to plaintiff's recovery that the promise should be in writing."

2. Even though the defendant, at the time of the contract with Vance, undertook and promised to pay the plaintiff's claim, the plaintiff is, nevertheless, not entitled to recover, unless he (the plaintiff) was present, assenting to the arrangement and agreeing to accept the promise of the defendant as a substitute for that of Rankin and Vance.

"This is true."

The court charged:— * * *

"The plaintiff seeks to recover from the defendant the balance of his claim on the article with Rankin and Vance, on the ground that he (Townsend) in his contract with Vance assumed the payment of the plaintiff's claim, and promised and agreed to pay the same to him. This is positively denied by the defendant. The plaintiff and defendant, who have both testified in the case, contradict each other, and are in direct antagonism. The evidence of the other witnesses is likewise conflicting. * * *

"[You must determine from the evidence whether Townsend agreed to assume and pay the plaintiff's debt at the time he entered into the contract with Vance. If you should be satisfied from all the evidence that the defendant made such engagement or promise, it would not be essential for the plaintiff to show that he

[Townsend v. Long.]

was present when it was made, or that it was made directly to himself. It would be sufficient if made to Vance.] [If the plaintiff sold out his furniture establishment to Rankin & Vance for the consideration of $700—six hundred to be paid on time—and Rankin afterwards went out of the business, Vance agreeing to fulfil that contract with the plaintiff, and Vance afterwards took the defendant in, the latter agreeing to pay the plaintiff's debt, the defendant would be liable on such promise made to Vance. It would enure to the plaintiff's benefit, and he may recover on it in this suit.]

"[It is insisted for the defendant that the promise, if made, was void, and cannot be enforced, because it was not reduced to writing, as provided by the Act of 26th April 1855; but we are not of that opinion. The consideration for the promise did not proceed from the plaintiff, but from Vance. Hence it was a new, original, and binding contract. The defendant's promise was induced by the advantage he acquired by means of his contract with Vance; and although the effect of his promise may be an assumption to pay the debt of another, it is binding, because it arises out of the new consideration of benefit to the defendant moving from Vance.]

" The jury will carefully consider all the evidence, and if they are not satisfied that the defendant made the promise as alleged, their verdict should be for the defendant. [If, however, they believe the defendant did assume the payment of the plaintiff's claim in his contract with Vance, then the plaintiff would be entitled to recover the amount unpaid, with interest, on his agreement with Rankin and Vance.]"

The jury returned this verdict: " The jury * * * do find a verdict for the plaintiff according to the terms of the article, with interest and costs of suit."

The defendant moved in arrest of judgment and to set aside the verdict on the ground that "it is uncertain, defective and indefinite." The motion was overruled and judgment directed to be entered on the verdict.

Judgment was afterwards entered on the verdict for $803, "as per liquidation of plaintiff's attorney filed."

The defendant took a writ of error and assigned for error :—

1, 2. The answers to his points.

3–6. The parts of the charge in brackets.

7. Overruling the motion in arrest of judgment and to set aside the verdict.

*Hart & Brady* for plaintiff in error.—The alleged promise is within the act to prevent frauds, &c., March 21st 1772, 1 Smith's Laws 389, and its supplement; April 26th 1855, sect. 1, Pamph. L. 308, 1 Br. Purd. 723, 724, pl. 1, 4. The original liability of Vance and Rankin continued to exist, and Townsend's promise was

27 P. F. SMITH—10

[Townsend v. Long.]

only collateral to it, it was therefore within the statute : Maule v. Bucknell, 14 Wright 39; Williams' Saunders 211 e, note 1; Shoemaker v. King, 4 Wright 107.

*Braden & Miller* for defendant in error.—If the promise was made by Townsend, it was not necessary that the plaintiff should have been present, and that it should have been made to him : Hind v. Holdship, 2 Watts 104; Beers v. Robinson, 9 Barr 229; Vincent v. Watson, 6 Harris 96; Torrens v. Campbell, 24 P. F. Smith 470. Where the parol promise is merely one of guaranty, it is within the statute; but there are cases where the liability of the original debtor remains, and a promise to pay his debt will still be good without writing : Browne on Statute of Frauds, sect. 194; Maule v. Bucknell, 14 Wright 39. The promise is not within the statute merely on the ground that the debt is that of another, but where it is to pay the promissor's own debt, although the debt of a third person be thereby guarantied, the promise is binding: Malone v. Keener, 8 Wright 107; Arnold v. Stedman, 9 Id. 186; Clymer v. De Young, 4 P. F. Smith 118; Uhler v. Farmers' National Bank of Bucks County, 14 Id. 406; Browne on Statute of Frauds, sect. 212.

Mr. Justice MERCUR delivered the opinion of the court January 4th 1875.

The last assignment having been withdrawn, the other assignments will be considered together. They all relate to a verbal promise to pay the debt of another. The first section of the Act of 26th of April 1855, declares no action shall be brought to charge the defendant upon any special promise to answer for the debt or default of another, "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him authorized."

The general rule is well settled that the promise is within the statute where it is collateral to a continued liability of the original debtor.

It is true, it was said, in Leonard v. Vredenberg, 8 Johns. 39, in regard to a similar statute, when " the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly-contracting parties," the case is not within the statute.

The cases of Malone *et al. v.* Keener, 8 Wright 107 ; Stoudt v. Hine, 9 Wright 30; Arnold v. Stedman, Idem 186, and Whitcomb *et al. v.* Kephart *et al.*, 14 Wright 85, have been cited in support of this view. In Malone v. Keener, the case of Leonard v. Vredenberg is cited with apparent approval; but the facts were sufficient to take the case out of the statute, without adopting that

rule of construction. The plaintiffs in error were contractors in the building of a railroad. They had sublet a portion of the work to the defendant in error. On settlement with this sub-contractor, and in part payment of the sum which they owed him, they delivered to him a note under seal, against the corporation from which they had taken the entire contract, and guaranteed its payment. It will be observed that they alone were indebted to him for his work and labor. That work and labor had been performed under a contract between him and them only. The debt which they thus sought to discharge was their own debt. In so doing they turned out the note, the payment of which they guaranteed. In no just sense can it be said that the design of this transaction was to answer for the debt or default of another. It was settling their own debt by the transfer of a chose in action, the apparent value of which they guaranteed to be its true value. This was based upon a full and sole consideration received by themselves. The promise did not come within the statute. It was good without any writing. The promise being in effect to pay their own debt, although in so doing they incidentally guaranteed the debt of another, did not change its character: Uhler v. Farmers' National Bank, 14 P. F. Smith 406.

In Stoudt v. Hine, the plaintiff had money in his hands, which unquestionably belonged to one Kallahan. The latter agreed with Hine that a specific sum should be paid to him by Stoudt, out of the money in his hands, and Stoudt agreed with Kallahan to pay it to Hine. Hence the court in sustaining the promise adopted the language of Mr. Brown, in his work on the Statute of Frauds, where he says, "it is obvious that an engagement in terms to apply the debtor's own funds received or to be received by the defendant, to the payment of the demand against him, creates a duty as agent, rather than a surety ; the defendant's promise is not to pay the debt, but merely to deliver certain property to the nominee of the original debtor, and the right of action of such nominee against the defendant for a breach of his promise, is not at all affected by the Statute of Frauds."

In Arnold v. Stedman, the defendant had filed a mechanics' lien on the equitable interest of Barrett in the land. Arnold then brought ejectment on his legal title, and obtained a verdict under an arrangement which gave it the effect of a conditional verdict. While this suit was in progress, Arnold and Stedman agreed that the latter should make no further costs on his lien, and that Arnold would pay Stedman his demand when the property came back to him. Stedman made no further costs. The property came back to Arnold. This agreement was held valid, for the reason that he thereby acquired the land, which at the time of the agreement, was charged with the debt due to Stedman. His promise was in relief of property to which he held the legal title, and to

facilitate his recovery of the land. This took the case out of the statute : Landis *v.* Royer, 9 P. F. Smith 95.

In Whitcomb *et al. v.* Kephart *et al.*, the controlling facts were these : One Goss had a contract with Langdon and Diven to cut saw-logs for them on their lands at a price specified. Afterwards Goss gave a sub-contract to the Kepharts by which they agreed to cut a part of these logs. The Whitcombs were agents for Langdon and Diven, and were furnished with money to pay Goss as the work progressed. Some complaint having been made by the Kepharts in regard to obtaining their payment, they and Goss and Whitcomb met face to face, and a new agreement was then and there made between the three parties. It was agreed that the Whitcombs should pay the Kepharts for their work, except so far as Goss himself might pay them; and that Whitcombs should reserve the sum thus paid by them out of the amount going to Goss under his contract with Langdon and Diven. The Kepharts went on with the work. The Whitcombs received the money from Langdon and Diven, wherewith to pay them, but did not do so. It had become their own debt under a contract in which Goss participated and agreed that they should receive the money for the use of the Kepharts. The promise then which the Whitcombs made was not to pay the debt of another, but to discharge their own original agreement; an agreement by which the money they might receive was appropriated to this specific object. A fund was then provided by Goss to pay the very debt which the Whitcombs agreed to pay. These facts then did not bring the case within the statute : Clymer *v.* De Young, 4 P. F. Smith 118.

The apparent favor with which Leonard *v.* Vredenberg had been cited in some of the preceding cases, was clearly and distinctly repudiated in Maule *v.* Buckwell *et al.*, 14 Wright 39. It was there said that, " It is not true as a general rule that a promise to pay the debt of another, is not within the statute if it rests upon a new consideration passing from the promissee to the promissor. A new consideration for a new promise is indispensable without the statute, and if a new consideration is all that is needed to give validity to a promise to pay the debt of another, the statute amounts to nothing. Nor can it make any difference that the new consideration moves from the promissee to the promissor." In further disproval of the rule recognised in Leonard *v.* Vredenberg, Mr. Justice Strong said, " That this proposition is inaccurate, however, is almost universally admitted, and as we have already remarked, it practically denies all effect to the statute. It cannot be admitted for a moment in the terms in which it was expressed." This case proceeds to show by the authorities, that the consideration for the promise is of importance only where it is either a substantial transfer of the creditor's claim to the promissor, making the transaction a purchase, or where it is a transfer to the promis-

[Townsend v. Long.]

sor of a fund pledged, set apart, or held, for the payment of the debt. It is only in such cases, or in those of a kindred character, if the old debt remains, that the promissor is liable, unless, by an agreement with the original debtor, the latter has become only secondarily liable.

This doctrine is in accord with the language of Chief Justice Lowrie, in Shoemaker v. King, 4 Wright 107. He said, "While the old debt remains the new contract cannot be substituted, but is only a collateral one, a promise to pay another debt, and it is forbidden by the statute as a cause of action." He, however, disclaimed any intention to question those cases in which a debtor had put money or other means into the hands of another to be delivered to a particular creditor of his, and the creditor had been held entitled to recover of the promissor. The judgment of the court was, that Shoemaker was not liable to a creditor of Harper & Reese, although, on his purchase of their entire partnership effects, he had verbally promised to pay all the debts of the firm. The evidence does not show any promise to pay the debts with those effects, nor from their proceeds. So in Maule v. Buckwell, supra, it was held that a verbal promise to pay all the debts of a private corporation made to certain directors of the company, on a sale and transfer to him of part of their stock, was within the statute, and the promissor was not liable to a creditor. Here too was no agreement to pay with the stock purchased or its proceeds.

In Clymer v. De Young, supra, on a sale of a stock of goods, the purchaser promised to pay a certain debt due by the vendor, and the promise was held not to be within the statute. The facts, however, show that this promise was not made to the vendor only, but was in an agreement between the creditor, purchaser and vendor. It was a contract made by all three of the parties. The promissor thereby became the principal debtor, and it was this debt of his own which he promised to discharge.

It is true, the opinion proceeds to liken the case to Stoudt v. Hine, when the facts were radically different. In the one, there was a promise to the person whose money he held, to pay over that money to a creditor, the creditor not being a party to the new agreement. In the other, there was an express agreement between the original debtor, the creditor, and the new promissor, so that it became a new contract between all the parties in interest, and the promissor was clearly liable to the creditor.

Where there is a transfer of a fund to the promissor, for the payment of the debt, as in Stoudt v. Hine, he is liable to the creditor on his verbal promise made to the owner of the fund; or if property charged with the payment of the debt be transferred to him, on his promise to the vendor to pay the debt, he is liable to an action by the creditor, as in Arnold v. Stedman, supra. In Torrens v. Campbell, 24 P. F. Smith 470, the agreement to pay

[Townsend *v.* Long.]

the debts was in writing, so the question of the statute did not arise.

As a general rule, the true question is not what is the consideration, but what is the promise? If, however, one assumes to pay the debt of another, in consideration of funds being placed in his hands for that purpose by the original debtor, then the consideration becomes an important fact in fixing the liability of the promissor to the creditor.

The general rule is that if the promise be to pay or discharge either absolutely or conditionally the debt of another then due, or thereafter to become due, on an existing contract, it is within the Statute of Frauds. Before a creditor can recover, then, upon a verbal promise to pay him the debt of another, he must bring himself within one of the class of excepted cases.

The finding of the jury in this case establishes substantially these facts: Long, Vance and Rankin were associated as copartners in the furniture and undertaking business, on a limited scale. In January 1870, Long sold to his co-partners his interest in the establishment, which included tools, hearse, ready-made furniture, accounts due them, and the use of the shop without rent until the 1st of May following. In consideration of which they were to pay him $700 without interest, $100 thereof on said 1st of May and the remainder at the expiration of eighteen months from the time of purchase; and also to pay all debts contracted while they were associating together. At the expiration of two months Rankin retired, leaving the property and business in the hands of Vance, with the understanding that the latter should pay all their debts. Vance continued the business for a short time, but in the same spring, and before making any payment to Long, sold out the entire establishment, including all debts due to it, to the plaintiff in error, in consideration of his verbal promise to pay all the debts of the concern, the debt in favor of the defendant in error being expressly mentioned as one of them. The actual value of the property thus sold and purchased is not clearly shown. It does not appear that any particular point was made in regard to it. In the absence of proof showing it, we will not assume its value to have been less than the amount Townsend agreed to pay. It was then a purchase, and taking possession by him, of the same property substantially that the defendant in error had delivered to Vance. It was practically an agreement to take and occupy the same position which Vance had held in the transaction. As Vance had taken and held the property under an agreement to pay Long, in like manner, on its transfer to Townsend, the latter was to take and hold it. While this did not create such a trust in the latter as could have been specifically enforced by bill in equity, yet it so far partook of the character of one as to transfer the superior obligation to him. Hence we conclude the fair inference to be, and it is not removed

[Townsend v. Long.]

by any evidence, that the property was transferred to the plaintiff in error with the understanding of the parties to the transaction that the avails and proceeds of the property and business should pay and discharge the debt due to the defendant in error. It is true, this view of the case was not clearly presented in the points submitted to the court below, nor in the answers of the learned judge, but as it naturally arises from the facts in the case, we see no sufficient error to reverse the judgment.

Judgment affirmed.