## Wynn's Administrator *versus* Wood et al.

1. If one deliver money or personal property to another, under the promise of the latter to deliver it over to a third person who has a beneficial interest therein, or to convert it into money and pay him the proceeds, the third person can maintain an action therefor against the promissor.

2. *A fortiori* is this the case where the person receiving the money or personalty subsequently promises the third party to deliver it to him.

3. Where one firm receives the assets of another, agreeing ·to pay the amount of the purchase-money, not into the hands of the vendors, but into the hands of their various creditors, according to the amount owing to each, this is not to be deemed an undertaking to pay the debt of another within the meaning of the Act for the Prevention of Frauds and Perjuries of April 26th 1855, sect. 1, Pamph. L. 308.

4. If, in such case, the firm receiving the assets undertook to pay the debts of the old firm only to the extent of the proceeds of such assets, and not to pay a debt due from the old firm to themselves until all the other creditors were satisfied out of said proceeds, and then, having realized certain proceeds, applied part to their own use, some presumption would be raised which should be submitted to a jury that they had previously realized out of the assets a sum sufficient to pay all the other creditors.

February 15th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county* : Of January Term 1881, No. 7.

Assumpsit, by Benjamin I. Wynn against Edward R. Wood, Ferdinand F. Sharp and J. Gardiner Haines, late trading as Wood, Sharp & Haines. The plaintiff sought to recover a debt due to him by the late firm of F. F. Sharp & Co., of which firm the defendants were the successors. The *narr.* contained a number of special counts, averring, in substance, that the defendants became liable to the plaintiff, directly, for the debt due him by F. F. Sharp & Co., by their promise and agreement with the latter that, in consideration of receiving the assets of the old firm, they, the new firm, assumed the liabilities of the old firm, including their debt to the plaintiff.

On the trial the plaintiff's evidence was substantially as follows : Prior to the 19th of February 1873, the firm of F. F. Sharp & Co., which consisted of Ferdinand F. Sharp and Isaac Sharpless, were engaged in the business of manufacturing and selling window glass. They had an office and store in Philadelphia, and a large glass factory and store at Millville, N. J. The plaintiff was their general manager at the factory. On February 19th 1873, the firm were indebted to him in several thousand dollars for salary and on other accounts. On that date a new partnership was formed between the above-mentioned defendants, which firm bought out the business and assets of the old firm at an appraisement of $114,000. The

[Wynn's Administrator *v.* Wood.]

plaintiff gave in evidence the defendants' articles of copartnership, which contained the following recital :

" Whereas, the said Sharp was lately senior partner of the firm of F. F. Sharp & Co., doing business in Philadelphia : And whereas, the said firm became involved in business difficulties so as to create alarm in the minds of his creditors, but the said Sharp believed the entire solvency of his said firm, provided sufficient time were afforded to collect its assets, and did so represent to said Wood and Haines ; and they, putting confidence in these representations, and desiring to assist him in the prosecution of his business, and in the payment of the debts of his said firm, did agree to *purchase* from them, F. F. Sharp & Co., all their stock in trade, good-will, fixtures and book accounts, at the full market value thereof, as by reference to the proper bills of sale will more fully appear, *and to pay for the property purchased by distributing the purchase-money among the creditors of F. F. Sharp & Co. until the said creditors are satisfied*, supposing the purchase-money to go so far ; and to pay the *surplus*, if any should be found after satisfying the creditors, over to F. F. Sharp and his partner, namely, Isaac Sharpless."

The plaintiff also put in evidence the following bill of sale :

Philadelphia, February 20th, 1873.

WOOD, SHARP & HAINES.
          Bought of F. F. SHARP & Co.
Terms : ⅓ 6 months ; ⅓ 9 months ; ⅓ 12 months.

Unused books, fixtures, stock in trade at Philadelphia and at Millville factories, at the valuation of

| | | |
|---|---:|---:|
| January 1st, 1873, . . . . . . | $71,381 | 00 |
| Less per over-valuation, . . . . . | 5,381 | 00 |
| | $66,000 | 09 |
| Debtor accounts on books to date, valued at . . | 48,000 | 00 |
| | $114,000 | 00 |

And also the following letter :

Philadelphia, March 24th, 1873.

Messrs. J. C. STOWELL & SON.

Dear Sirs.—In answer to yours of the 20th inst., to Messrs. F. F. Sharp & Co., we regret to have to say, owing to their assets not being as represented by $14,000, it will be impossible for them to pay more than 80 cents, the present firm who are managing the business in behalf of the creditors not being willing to endorse for more than 80 cents. Mr. Sharp agrees to give his paper for the balance, with interest, for 18 months or two years. The 80 cents will be for 6, 9 and 12 months, dating from January 15th.

The two members, Wood and Haines, of the new firm, are the

heaviest creditors, to the amount of $50,000, and hence will not allow any one creditor to have any advantage over another.

Yours truly,

Wood, Sharp & Haines.

Will forward you the paper in a few days.

The testimony of witnesses on behalf of the plaintiff, was to the effect, that the original agreement, whereby the defendants promised F. F. Sharp & Co. to buy them out for $114,000, and instead of paying F. F. Sharp & Co., to pay the creditors of F. F. Sharp & Co. was verbal; that the defendants had actually paid a large number of the creditors of F. F. Sharp & Co., at least eighty per cent. of their claims; that both Sharp and Wood, as members of the new firm, had admitted the correctness of the plaintiff's demand, and had promised verbally to pay it; that the defendant Wood, said to the plaintiff, "Make out your account and I will see that it is paid: I will pay it; you ought not to take eighty per cent.; you are entitled to all of it;" and that the plaintiff made out the account and sent it to Wood, but it was not paid. Further, that the defendants had paid the sum of $17,000 to the members of F. F. Sharp & Co., viz., to F. F. Sharp, $12,000, and to Isaac Sharpless, $5000.

At the close of the plaintiff's evidence, the court, on motion of the defendants, granted a nonsuit, and the court in banc subsequently discharged a rule to take it off.

The plaintiff died after the trial, and his administrator was substituted; he took his writ of error, assigning for error the refusal of the court to take off the nonsuit. .

*John Scollay*, for the plaintiff in error.—There was ample evidence to be submitted to the jury of an agreement and promise, on the part of the defendants to pay the purchase-money for their purchase from F. F. Sharp & Co., to the creditors of the old firm. The nonsuit was entered on the grounds that the plaintiff was a stranger to the consideration, and could not maintain an action against the defendants in his own name; and because the promise being by parol to pay the debt of another was within the Statute of Frauds. But the defendants' promise was not to pay the debt of another, but was to pay the purchase-money, due by them, to third parties, viz., the creditors of the old firm, of whom the plaintiff was one. It was thus their own debt which the defendants agreed to pay to parties nominated by their vendors. The vendors and vendees agreed to substitute one payee for another. They had the right to do this, and the person for whose benefit the contract was made, may maintain his action against the person who has taken the property of and agreed to substitute himself for the original debtor. Such an agreement is not within the Statute of

[Wynn's Administrator *v.* Wood.]

Frauds. It need not be in writing, and is valid though made without the knowledge of the creditor to be benefited by it. The latter becomes the owner of the fund thus impressed with a trust for him and can sue for it in his own name: Justice *v.* Tallman, 5 Norris 147; Townsend *v.* Long, 27 P. F. Smith 143; Taylor *v.* Preston, 29 Id. 436.

*Samuel S. Hollingsworth,* for the defendant in error.—If the contract sued on is a contract to take the assets of F. F. Sharp & Co., and pay the creditors of that firm 80 per cent. of their claims absolutely, then the defendants are liable only to the parties, and at the suit of the parties with whom they made such agreement. And if this be the contract, any action upon it is barred by the Statute of Frauds, because it is not in writing: Blymire *v.* Boistle, 6 Watts 182; Ramsdale *v.* Horton, 3 Barr 330; Finney *v.* Finney, 4 Harris 380; Campbell *v.* Lacock, 4 Wright 448; Robertson *v.* Reed, 11 Id. 115; Kountz *v.* Holthouse, 4 Norris 235; Guthrie *v.* Kerr, Id. 303; Knap *v.* Duncan, 8 W. N. C. 514; Shoemaker *v.* King, 4 Wright 107; Maule *v.* Bucknell, 14 Id. 39. If the contract was to take the assets of the old firm and distribute them, or their proceeds among the old firm's creditors, then it was a trust fund in the hands of the defendants, and the *cestui que trust*—the creditor of the firm—cannot sue in assumpsit to recover his debt; his remedy is to file a bill in equity for himself and other creditors to have an account of the administration of the trust; Vandakin *v.* Soper, 2 Am. Lead. Cas. 175; Reeside *v.* Reeside, 13 Wright 322; Millard *v.* Baldwin, 3 Gray 484; Clapp *v.* Lawton, 31 Conn. 95.

Mr. Justice MERCUR delivered the opinion of the court, May 2d 1881.

The court thought the evidence of the plaintiff insufficient to submit to the jury. It therefore ordered a compulsory nonsuit, and refused to take it off. This presents the alleged error.

The defendants, Wood, Sharp & Haines, are copartners in the business of manufacturing and selling window glass and in selling oils and paints. They are the successors of the firm of F. F. Sharp & Co. This original firm was indebted to the plaintiff before and at the time of the transfer to the defendants. It transferred all its stock in trade, good-will, fixtures and book accounts to the defendants.

The contention is whether the terms of transfer, and subsequent transactions, gave the plaintiff a legal right of action against the defendants to collect the debt due him, or any part thereof.

It is true, as a general rule, an action on a contract must be in the name of the party holding the legal interest therein; yet this is not invariably so. In many cases, a third person may maintain

[Wynn's Administrator *v.* Wood.]

an action on a promise made to another.   Hence, if one deliver money or personal property to another under the promise of the latter to deliver it over to a third person who has a beneficial interest therein, or to convert it into money and pay him the pro ceeds, the third person can maintain an action therefor against the promisor: Hind *v.* Holdship, 2 Watts 104; Beers *v.* Robinson, 9 Barr 229; Vincent *v.* Watson, 6 Harris 96; Bellas *v.* Fagely, 7 Id. 273; Torrens *v.* Campbell, 24 P. F. Smith 470; Townsend *v.* Long, 27 Id. 143; Kountz *v.* Holthouse, 4 Norris 235; Justice *v.* Tallman, 5 Id. 147.

What, then, was the evidence?   As it stood uncontradicted, was it sufficient for the jury to have passed upon it?

All the terms and conditions of the bargain were not reduced to writing at the time the defendants acquired the property of F. F. Sharp & Co.   The terms are proved partly by parol and partly by an instrument in writing executed about the same time by the defendants between themselves.

F. F. Sharp was one of the previous firm, and became one of the new, or defendants', firm.   He testified, inter alia, that the defendants' firm did receive assets from F. F. Sharp & Co., amounting to about $114,000, and was to pay 80 per cent. of the liabilities of the firm of F. F. Sharp & Co., and the indebtedness due the plaintiff was among the liabilities thus assumed by the defendants. The written articles of copartnership between the defendants recites: Whereas, said firm "did agree to purchase from them, F. F. Sharp & Co., all their stock in trade, good-will, fixtures and book accounts at the full market value thereof, as by reference to the proper bills of sale will more fully appear, and to pay for the property purchased by distributing the purchase-money among the creditors of F. F. Sharp & Co. until the said creditors are satisfied, supposing the purchase-money to go so far, and to pay the surplus, if any should be found after satisfying the creditors, over to F. F. Sharp and his partner, Isaac Sharpless."   This agreement of copartnership further stipulated that "Wood shall have general supervision of the business."

The evidence of Wynn, the plaintiff, taken in his lifetime, is that he was in the employ of F. F. Sharp & Co. at the time the property was transferred to the defendants, on the 20th of February 1873.   The defendants reported to him that they took the assets of F. F. Sharp & Co., and assumed their liabilities to the extent of 80 per cent.   He further testified that, after the transfer to the defendants, Wood promised to pay him the amount due if he would make out the amount and give it to him; that he made it out and gave it to him.   Wood said to him he ought not to take 80 per cent., but was entitled to all of it; that he would pay it.   Haines had previously urged him to make out the account and send it to Wood; that he had promised to pay it if plaintiff would make it

[Wynn's Administrator *v.* Wood.]

out; that Sharp, while a member of the firm, told him that Wood had the account, and promised to pay him. F. F. Sharp, one of the defendants, also testified, "I did promise Wynn, the plaintiff, that Wood, Sharp & Haines would pay him for the services he rendered the preceding firm."

It is unnecessary to refer to more of the evidence in detail. As already shown, the defendants made no payment at the time they took possession of the property valued at $114,000. The evidence of F. F. Sharp leaves it uncertain precisely what sum the defendants should pay, and whether that sum was not to be guaged by, and paid out of, the sum realized out of the property taken by them. Their own written averment is that they were not to pay F. F. Sharp & Co. anything until the creditors were satisfied, if the purchase-money was sufficient for that purpose.

If the contract of the defendants was one of purchase, their agreement was not to pay the debt of another, but to pay their own debt incurred in the purchase of the property; and perhaps a jury might find that the extent of their obligation to pay was to be limited to the application of the proceeds of the property of which they took possession. The evidence shows the defendants carried on the business for a short time. They collected the accounts assigned to them, so far as they were collectable, and applied some of the proceeds to their own use. They also paid most of the creditors of their predecessors. Still further, they paid $12,000 to Sharp, who was a member of both firms, and $5000 to Sharpless, the other member of the firm of F. F. Sharp & Co. As they were not to be paid anything until the creditors were satisfied, this fact might create some presumption that the defendants had previously realized out of the assets a sum sufficient to pay all the creditors. This might have an important bearing in arriving at the true character of the transaction. We think the evidence is amply sufficient to have been submitted to the jury under proper instructions.

Objection was made on the argument that the evidence was not admissible under the *narr.* Inasmuch, however, as no objection appears to have been taken to its admission when offered, we will now consider it as properly received.

Judgment reversed, and a *venire facias de novo* awarded.