H. D. Dougherty & Co., Appellants, *v.* Michael Bash.

167     429|
e 31 SC ¹132|

*Statute of Frauds—Guaranty—Parol agreement to discount notes.*

Under a parol agreement, plaintiffs were to continue to sell goods to certain of their customers and obtain from them all the cash they could, and take their notes for the balance due upon each month's settlement, and "defendant would discount said notes for plaintiffs without recourse." There was nothing said about the original debt being extinguished by the giving of the notes. *Held,* that the agreement was within the statute of frauds, and could not be enforced.

The promise of the defendant was in reality a promise to pay the debt of another without any acquisition of property as a consideration therefor, and without the presence of any exceptional circumstances which would prevent the application of the statute.

*Promissory notes—Note as extinguishment of the original debt.*

The mere taking of the debtor's note by a creditor for a debt contracted for goods sold, does not extinguish the debt unless it is specially agreed that the note should be taken as payment of the debt.

Argued Jan. 22, 1895. Appeal, No. 141, July T., 1894, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1891, No. 218, refusing to strike off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN, and FELL, JJ. Affirmed.

Assumpsit to recover damages for the breach of a parol agreement to discount promissory notes. Before PENNYPACKER, J.

Plaintiffs in their statement of claim averred as follows :

"Prior to October 10, 1891, plaintiffs were engaged in selling bedding and bedding material to Charles Weinmann & Co., the principal partner wherein was one Charles Weinmann, who was a son-in-law of defendant. On said date H. D. Dougherty, one of plaintiffs, acting herein for plaintiffs, said to defendant that plaintiffs were unwilling to sell any more goods to said Charles Weinmann & Co., unless plaintiffs had some one who would take, without recourse, the notes given by said Charles Weinmann & Co. in payment thereof. Defendant thereupon stated that if plaintiffs would sell Charles Weinmann & Co. all the goods in their line which the said Charles Weinmann & Co. desired, and would get what cash plaintiffs could on account

of the purchases thus made, and would take the notes of Charles Weinmann & Co. for the balance of the account, drawn to said Charles Weinmann & Co.'s own order and by them indorsed, that he, defendant, would discount said notes for plaintiffs without recourse.

" Said H. D. Dougherty thereupon stated to defendant that on that condition only would they sell goods to said Charles Weinmann & Co., and that otherwise they would stop doing so. In accordance with said agreement plaintiffs sold to Charles Weinmann & Co. from that date until Nov. 1, 1891, all the goods in plaintiffs' line which said Charles Weinmann & Co. desired, aggregating in amount the sum of $1,324.70. On Nov. 6, 1891, plaintiffs had a settlement with said Charles Weinmann & Co. for the goods sold during that period, and received from them in payment thereof $324.70 in cash and said Charles Weinmann & Co.'s note, to their own order and by them indorsed, for $1,000, payable in ninety days from date, that being the usual time said notes had to run. Plaintiffs thereupon on the same day took said note to defendant and asked him to discount it, without recourse to plaintiffs, as he had agreed to do, and told him that they would not have sold said Charles Weinmann & Co. the goods but for his agreement to take the note. Defendant refused to receive the said note or to discount it, or to pay the plaintiffs anything, though he admitted his agreement as above set forth. No part or portion of said sum has been at any time paid plaintiffs, and said note is still in their possession ready to be handed to defendant."

At the trial there was evidence that tended to show that about $250 of the note were for goods sold prior to Oct. 10, 1891.

Evidence for the plaintiffs tended to support the averments of their statement. A nonsuit was moved for, (1) because the agreement was within the statute of frauds; (2) because the $1,000 note in part included the price of goods sold prior to the date of the agreement.

The court entered judgment of nonsuit which it refused to take off. Plaintiffs appealed.

*Error assigned* was refusal to strike off nonsuit.

*Alex. Simpson, Jr.,* for appellants.—The case is not within the statute of frauds : Act of April 26, 1855, P. L. 308 ; Purd. 831, P. L. 4 ; DeColyar on Guaranties, 54 ; Hearing v. Dittman, 8 Phila. 307 ; Reed on the Statute of Frauds, sec. 86, 113 ; Malone v. Keener, 44 Pa. 107 ; Townsend v. Long, 77 Pa. 143 ; Grayson's App., 108 Pa. 581 ; Siebeneck v. Anchor Savings' Bank, 111 Pa. 187 ; Mechanics' Bank v. Huston, 11 W. N. C. 389 ; Nugent v. Wolf, 111 Pa. 480 ; Merriman v. McManus, 102 Pa. 102.

*A. B. Shearer, Emanuel Furth* with him, for appellee.— When the leading object of the promise or agreement is to become guarantor or security to the promisee for a debt for which a third party is and continues primarily liable, the agreement, whether made before or after or at the time of the promise of the principal, is within the statute and not binding unless evidenced by writing : Carville v. Crane, 5 Hill, 485 ; Chepline v. Atkinson, 55 Am. R. 534 ; Browne on the Statute of Frauds, sec. 174 ; Anstey v. Marden, 4 B. & P. 124 ; Williams v. Leper, 3 Burr. 1886 ; Edwards v. Kelly, 6 M. & S. 204 ; Houlditch v. Milne, 3 Esp. 86 ; Arnold v. Stedman, 45 Pa. 186 ; Mallet v. Bateman, L. R. 1 C. P. 163 ; Nugent v. Wolfe, 111 Pa. 471.

*Alex. Simpson, Jr.,* for appellant, in reply.—Carville v. Crane, 5 Hill, 48, which holds as invalid a parol promise to indorse a note for goods to be sold to the makers is, of course, properly decided, for the liability of the maker is retained.

Chepline v. Atkinson, 55 Am. R., 534, which holds that a parol promise to accept a bill is within the statute, is contrary to our decisions : Spaulding v. Andrews, 48 Pa. 411 ; Dull v. Bricker, 76 Pa. 255.

Mallet v. Bateman, L. R. 1 C. P. 163, so far as it bears upon the present question, is contrary to the principles of Arnold v. Stedman, 45 Pa. 186 ; Taylor v. Preston, 79 Pa. 436 ; Townsend v. Long, 77 Pa. 143.

OPINION BY MR. JUSTICE GREEN, April 15, 1895 :

We think it very clear that in whatever way the plaintiffs' claim may be regarded, it is founded upon a verbal assumption

to pay a debt of other parties, without any beneficial consideration moving to the promisor, in which he had no personal interest, and as to which the original promisors continued to be liable.    According to the plaintiffs' statement of their cause of action, and according to their testimony on the trial, they were to continue to sell goods to the original debtors, they were to get from them all the cash they could and for the balance due upon each month's settlement the debtors were to give their own promissory notes, which the plaintiffs were to bring to the defendant and the " defendant would discount said notes for plaintiffs without recourse."    The transaction then would be, purchases of goods in the future by Weinmann & Co. from Dougherty & Co., settlements every month and the obtainment from Weinmann & Co. of all the money they could on account, and the taking of notes of Weinmann & Co. for the balances due, payable at a future day, to their own order, and indorsed by themselves, and these notes were to be brought by Dougherty & Co. to Bash, the defendant, who was to discount them for Dougherty & Co., without recourse to Dougherty & Co.

It is perfectly manifest that the only ownership of the notes which could ever accrue to Bash would be by virtue of his discounting them, that is lending the money on them.    If Weinmann & Co. paid the notes at maturity Bash would have no further interest in them, and no interest at any time except as a lender of money.    The principal obligation involved under the agreement was the obligation of Weinmann & Co., as makers of promissory notes, and that obligation was to continue until the maturity of the notes.    It would not be in the least degree extinguished, or changed, or diminished, on account of the defendant having advanced the money for such a note. Both the original statement of cause of action and the amended statement describe the defendant's undertaking as an agreement to " discount said notes for plaintiff without recourse."

The plaintiff Dougherty being on the witness stand was asked, " Q. What did you do with the note in connection with the note that Mr. Bash had ?    A. We sent word to Mr. Bash that we had secured Weinmann & Co.'s note as directed by him and we were ready to have him discount it.    He sent us word, he sent us a postal card, I think, that he would call."    Speaking of his interview with Bash on October 9, 1891, in reference

to the first note, he said, "I called to see Mr. Bash in relation to the note that I had taken in settlement of his account with Weinmann & Co. on that day for the purpose of having him discount it. I had some conversation regarding Weinmann & Co., and I proposed to him that he take this note and discount it without recourse to us."

In speaking of that note he said Bash "guaranteed the payment of the note." The plaintiffs' bookkeeper, Miss Campbell, spoke in the same language in describing the same conversation. In most of the conversations with Bash, as stated by Dougherty, he said that Bash said he should bring the notes to him, Bash, and he would take them. It matters but little what the precise words used were; it is very evident that so far as Bash's undertaking was concerned he was to furnish the money for the notes, to the plaintiffs, and to hold the notes without recourse to the plaintiffs. The important feature of the transaction was that Bash did not promise to pay for the goods which the plaintiffs sold to Weinmann & Co., but only to furnish the money for such notes of Weinmann & Co. as were brought to him by the plaintiffs. This simplifies the matter very much and eliminates many of the decided cases from consideration.

We have also been unable to discover any evidence on the record showing that the original indebtedness of Weinmann & Co., to Dougherty & Co., for the goods sold, was extinguished or surrendered. The mere taking of the debtor's note by a creditor for a debt contracted for goods sold, does not extinguish the debt unless it was specially agreed that the note should be taken as payment of the debt: Kemmerer's Appeal, 102 Pa 558. This is well illustrated in the law of mechanics' liens where it is held that the acceptance of the debtor's note for the materials furnished does not extinguish the lien, which may be enforced notwithstanding the note: Jones v. Shawhan, 4 W. & S. 257.

Without any such evidence in this case therefore, it is evident that Dougherty & Co., after taking the note of Weinmann & Co., still retained their right to collect the debt for the goods sold and delivered to Weinmann & Co.

It appears, therefore, that the original debt against Weinmann & Co. survived after the giving of the note, and its extinction was no part of the agreement between the plaintiffs and the defendant, or between the plaintiff's and Weinmann & Co.

It seems to us clear, in view of all the facts and the whole circumstances of the transaction, that the defendant's promise to take the notes of Weinmann & Co., and pay or advance the money for them, was only a promise to pay the debt of a third person, and, not being in writing, was void under the statute of frauds and perjuries. In Maule v. Bucknell, 50 Pa. 39, which was one of the earliest and best considered cases arising under our statute of 1855, Mr. Justice STRONG, in a very exhaustive and able opinion, reviewed the cases thoroughly, and stated the following deductions from them: "It is undoubtedly true that a promise to answer for the debt or default of another is not within the statute, unless it be collateral to a continued liability of the original debtor. If it be a substitute, an arrangement by which the debt of the other is extinguished, as where the creditor gives up his claim on his original debtor, and accepts the new promise in lieu thereof, it need not be in writing. And as the cases referred to show, it may be unaffected by the statute, though the original debt remains, if the promisor has received a fund pledged, set apart, or held, for the payment of the debt. But except in such cases, and others perhaps, of a kindred nature, in which the contract shows an intention of the parties that the new promisor shall become the principal debtor, and the old debtor become but secondarily liable, the rule it is believed may be safely stated, that while the old debt remains the new must be regarded as not an original undertaking, and that it is therefore within the statute. At least this may be stated as a principle generally accurate. In Williams' Saunders, 211 e, note 1, it is said, 'The question whether each particular case comes within the clause of the statute or not, depends not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise.' The doctrine of this note is supported by very many cases, and it is in harmony with the words of the statute. It is incumbent then upon him who would enforce a mere verbal promise of one to answer for the debt or default of another, if the original debt remains, to show that his case is one of those that are recognized as exceptional. And it will be found after examination, that in nearly all the decisions in which it has been held that

such a promise is not within the statute, there was some liability of the promisor, or his property independent of his express promise, or that he had become the actual debtor, so as that between him and the original debtor the superior liability was his." All of the foregoing was repeated and affirmed in Nugent v. Wolfe, 111 Pa. 471, and it has never been qualified or limited in any of our subsequent cases.

If we try the present case by the standard set out in the foregoing citation, it seems to be conclusive. As we have seen, the original debt of Weinmann & Co. was not to be extinguished by the arrangement as testified to by Dougherty. Nor was there to be any liability of Bash except that which was contained in his promise. No fund or property was to be placed in his hands as against his liability, nor did his promise relate to any personal interest or property of his own. The affirmative testimony of the plaintiffs exhibits the absence of the exceptional circumstances which might take the case out of the statute. The debt to be paid was a debt of Weinmann & Co., who were third persons as to Bash. That it was to be done by advancing money on, or paying their notes, does not alter the fact that it was their debt that was to be paid. Nor do the facts warrant any inference that the transaction was to be a mere purchase of securities. The whole arrangement was to be for future purchases of goods by Weinmann & Co., from Dougherty & Co., to be paid for as far as possible by Weinmann & Co., each month, and the giving of Weinmann & Co.'s notes for the unpaid balance. These notes the defendant was to discount, or advance money upon them, or to pay, as between the defendant and Dougherty & Co. In real truth it was a mere discount, because the obligation of Weinmann & Co. to pay the notes at maturity continued, and if they paid them when due, they thereby extinguished what was still their own debt, and the defendant would be reimbursed for his advance.

The case of Mallet v. Bateman, L. R. 1 C. P. 163, comes nearer to this in its facts than any other we have met with, in fact it is entirely similar in its leading features. The plaintiff sold iron buckles or fasteners for bridge floors to Calvert & Co. at the instance of the defendant who was an iron broker, and Calvert & Co. were to pay cash for the goods at each delivery. Calvert & Co. became slow in their payments, and the plaintiff

being dissatisfied called upon the defendant, who said if the plaintiff would get the acceptance of Calvert & Co for the goods then delivered at thirty days he would cash the draft for a discount of three per cent without recourse to the plaintiff. This was done and the defendant gave the plaintiff a written guaranty against liability on the acceptance. The plaintiff then refused to deliver more buckles to Calvert & Co., unless he was secured for the payment of future invoices, and the defendant, who was interested in having the bridge completed, promised him verbally that he would take the acceptances of Calvert & Co. for future invoices to the extent of the contract with Calvert & Co. off his hands on the same terms and in the way he had taken the one already mentioned. On the faith of this promise plaintiff went on and delivered the goods to Calvert and Co. and obtained their acceptance for the price. Calvert & Co. failed and the defendant refused to take their acceptance off the hands of the plaintiff. It was held by all the judges that the statute applied to the agreement and that the plaintiff could not recover. The court held that it was substantially an agreement, that if the buyers of the goods did not pay for them at the end of a month's credit, the defendant would indemnify plaintiff against their default. POLLOCK, C. B., delivering the opinion, said, " The real question here is whether the contract declared upon is not substantially a contract that, if Calvert & Co., the buyers of the goods, do not pay for them at the expiration of the month's credit, the defendant will indemnify the plaintiff against their default. In consideration of a discount of three per cent the defendant undertakes to hold the bill without recourse to the plaintiff. That is in substance an engagement by which the buyers of the goods are not to be exonerated, but the defendant is to indemnify the seller against their default. That is clearly a contract within 'the statute of frauds." This case was an appeal from the common pleas to the exchequer chamber and both courts concurred in the ruling.

The learned counsel for the plaintiffs claims that this decision is in conflict with our own cases of Arnold v. Stedman, 45 Pa. 186 ; Taylor v. Preston, 79 Pa. 436, and Townsend v. Long, 77 Pa. 143, but an examination of those cases fails to disclose any hostility to Mallet v. Bateman, but shows that

they were all cases which were taken out of the operation of the statute by the exceptional circumstances previously indicated.

Arnold v. Stedman was decided upon the express ground that Arnold's verbal promise was to pay a debt which was a mechanic's lien upon his own property, and in which he was interested to have the proceedings on the lien suspended. In Taylor v. Preston the promise was by the assignee of a vendee under articles to pay unpaid purchase money named in the articles, and we held that the promisor was bound to pay it because it was his own debt. So also in Townsend v. Long the promisor bought out an entire partnership stock and agreed to pay as part consideration of the purchase all the debts of the firm, one of which was due to a former partner who had sold his interest to the other members for $700, and this debt was also specially named in the transfer. We held the promisor liable on this promise because it was his own debt which he had agreed to pay in consideration of the property sold to him. We made the same ruling in Wynn v. Wood, 97 Pa. 216.

We have not been referred to any case, nor have we met with any, in which a transaction like the present has been held to be clear of the statute. We are of opinion that the promise of the defendant Bash was in reality a promise to pay the debt of another without any acquisition of property as a consideration therefor, and without the presence of any of the exceptional circumstances which prevent the application of the statute. Being only a verbal promise it is void under the statute.

Judgment affirmed.