The Farmers' National Bank of West Chester, Penna., *v.* Joseph N. Marshall, Appellant.

*Promissory notes—Collateral note—Release of indorser.*

The principle, that nothing short of an agreement to give time which binds the creditor and prevents his bringing suit will discharge the surety, applies with like force to the makers and indorsers of commercial paper. Giving time and a contract to give time are distinct and independent things

*Banks and banking—Deposits of maker of note—Application in relief of indorser.*

Where a bank has a deposit at the maturity of a note belonging to the maker he must retain it for the benefit of the indorser or the latter will be relieved from liability; the deposit must be sufficient at the maturity of the note; subsequent deposit will not raise the duty. In the absence of evidence showing the state of the maker's account at the time of maturity of the note on which suit was brought against the indorser, the rule could not be applied.

*Evidence—Legal effect of a written instrument—Province of court and jury.*

It is within the province of the court to pass upon the evidence when the facts or conclusions to be drawn from them are not in dispute; and when the evidence involves the intrinsic effect of a paper its construction is exclusively for the court. When, however, the question is not the legal effect of a written instrument and it is offered as evidence of a fact merely, its interpretation is for the jury.

*Evidence—Effect of notary's certificate of protest—Preliminary proof to raise presumption—Question for jury.*

The protest of a notary public has the probative force of a deposition only; it is but the substitute for oral testimony delivered at bar.

The receipt of notice of protest having been denied by defendant indorser, evidence that the notice of protest was a "prepaid letter" or that it was properly stamped for transmission and delivery was part of the preliminary proof in order to raise presumption of delivery by mail to the defendant. Such preliminary proof being absent both in the notary's certificate and the oral testimony given at the trial, it was error to give binding instructions in favor of the plaintiff; like all questions resting in parol it was for the jury to decide under proper instructions.

Argued Nov. 22, 1898. Appeal, No. 31, Oct. T., 1898, by defendant, from judgment of C. P. Chester Co., April T., 1897, No. 61, on verdict for plaintiff. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by SMITH, J.

Assumpsit. Before HEMPHILL, P. J.

The defendant was accommodation indorser of two notes for $200 each discounted by plaintiff. At the maturity of the notes the bank took from Brick, the maker, a note at sixty days for $900 which included the notes in suit and another of $500, not indorsed by defendant. This $900 note was discounted and renewed from time to time and payments were made reducing the same to $600, which payments were applied under direc

tions of Brick, to the $500 note. The fact that notice of protest was received by defendant was denied by him.

[The trial judge admitted the notary's certificate of protest at the inception of the trial under objection of defendant.] [2] [Evidence was also admitted of a letter carrier, Granville S. Bennett, that letters placed in the post-office at 4 o'clock were delivered that day and that the carrier delivered letters in the office to Joseph N. Marshall at that time.] [3] [The court refused on the trial of the case to permit defendant to show that at the time of the maturity of the renewals of the $900 collateral note, there was sufficient of the maker's money on deposit in the bank to have paid one of these $200 notes in suit.] [6] [The offer of the defendant that he was an accommodation indorser upon the notes in suit and that he received none of the proceeds of their discount by the bank was refused.] [7] [The court below gave binding instructions to render a verdict for the plaintiff.] [8]

The following point submitted by defendant at the trial was disaffirmed by the court:

[Where the bank holds funds of the maker of a note, when the note matures it is bound to consider the interest of the indorser, and if it allows the maker to withdraw his funds, the bank is liable and cannot recover in the action against the indorser. *Answer:* That point is disaffirmed. My understanding of the law is, that where a note matures and the man has sufficient deposits in the bank, where the drawer has sufficient deposits in the bank, at the time of the maturity of the note to pay in full—it is the bank's duty to charge the note up against his deposit—otherwise it is not. It is not bound to do it at some later day if he should have deposits there.] [11]

Verdict and judgment for plaintiff for $402.80. Defendant appealed.

*Errors assigned* among others were (1) in admitting the notes in evidence, upon which the suit was brought, at the inception of the trial. (2) In admitting the notary's certificates of protest at the inception of the trial. (3) In admitting the evidence of the letter carrier, Granville S. Bennett, after he had declined to answer the question as to receipt of appellant's letters through him. (5) In refusing to permit defendant to show on the trial

of the case that the bank from time to time renewed this $900 note given as collateral for the two notes in suit, and interest paid thereon with the successive renewals, and that plaintiff was claiming no interest on the notes in suit, in consequence of such payment and renewals. (6) In refusing to permit defendant to show that at the time of the maturity of the renewals of the $900 collateral note, there was sufficient of the maker's money on deposit in the bank to have paid one of these $200 notes in suit. (7) In refusing to permit defendant to show that he was accommodation indorser. (8) In giving binding instructions. (11) In disaffirming defendant's third point, reciting point and answer.

*Charles H. Pennypacker*, for appellant.—The Farmers' National Bank of West Chester is trying to help its depositor and compel his accommodation indorser to pay the principal of two $200 notes, which have been due since 1892, and this appeal has been taken to prevent the accomplishment of this wrong. The appellant lives in West Chester within a square of the bank, was not a customer of the bank, and had no dealings with it. Four years and five months elapsed before any payment was demanded from Marshall, and in the intervening years Brick who made these notes was a continuous depositor and customer of the bank. According to the cashier's tale, these two notes slept in the drawer while a collateral note of $900 was hoisted over them like an umbrella, so that the bank examiner might not see or smell any dead paper, and Brick paid the discounts all these years. Did not such conduct on the part of the bank make the debt the sole debt of Brick and relieve the unnotified indorser?

The defendant is entitled to have the question of fact as to the sending of the notice decided by a jury: The Historical Publishing Co. v. Hartranft, 3 Pa. Superior Ct. 59; Jensen v. McCorkell, 154 Pa. 323; The London Assurance Corporation v. Russell, 1 Pa. Superior Ct. 320.

The questions of actual notice of nonpayment and of waiver are always for the jury.

A valid agreement extending the time of payment operated to suspend the right to prosecute and so discharged the indorser: Pomeroy v. Tanner, 70 N. Y. 547; Manufacturer's Bank v. Bank, 7 W. & S. 335.

The acceptance of discount in advance upon the $900 note was certainly a binding engagement to give time: Siebeneck v. The Anchor Savings Bank, 111 Pa. 187.

*William S. Windle* and *Thomas S. Butler,* for appellee.—It is sufficient proof of the delivery of a notice to show that it was sent in a letter by the post, without proving that the letter was received, provided the delivery be on the day on which notice should be given: Smyth v. Hawthorn, 3 R. 357.

Notice sent by the post, properly directed, is sufficient, though the letter containing it should miscarry: Weakly v. Bell & Sterling, 9 W. 273.

It is sufficient proof of notice that it was in due time sent in a letter without proving that the letter was received : Jones v. Wardell, 6 W. & S. 399.

The putting a letter into the post-office shall be considered as notice, whether it be received or not, provided it might have reached the person to be affected in the regular course of the mail: Smith v. Bank of Washington, 5 S. & R. 318.

A notary's certificate of notice of protest is prima facia evidence of the fact though it appear by the evidence that he did not mail it himself, but handed it to another to mail: Landis v. Marker, 2 Del. Co. 473.

What is due notice of the nonpayment of a promissory note is a question of law for the court: Sherer v. The Easton Bank, 33 Pa. 134.

"Whether there is any evidence to submit to the jury is a question of law for the court:" Payne v. Ulmer, 1 Walk. 516.

The law presumes that those letters were received by the indorser and the jury would not have been warranted in finding otherwise, although the indorser testified that he did not receive them. The jury would not have been warranted in finding that legal notice had not been given. The evidence of defendant is that no notice of protest was received; there is nothing to the effect that no notice was given. See Miller v. Vandike, 13 W. N. C. 281, Moore v. Somerset, 6 W. & S. 262, and McConeghy v. Kirk, 68 Pa. 201.

There is nothing in the evidence to show that the bank could not have brought suit on the notes at any time. There was no evidence of any extension of time to the maker.

An indefinite extension of time for payment of a promissory note granted by the holder to the maker, does not release the indorser.   Inasmuch as such an agreement would not estop the holder from suing the maker on the note forthwith, so the indorser, by taking up the note, could sue on it immediately: People's Bank of Wilkes-Barre v. Legrand, 103 Pa. 309.

Where at the maturity of a note held by a bank, the makers' balance on deposit in said bank was insufficient to pay the note, which was protested for nonpayment, the bank is not bound for the protection of the indorser to apply the makers' subsequent deposits to payment of the note although they were sufficient for the purpose: People's Bank of Wilkes-Barre v. Legrand, 103 Pa. 309.

Opinion by Smith, J., March 23, 1899:

The plaintiff held two negotiable notes of T. S. Brick, for $200 each, on which the defendant was indorser; and another note of $500, indorsed by Davis Pennock only.   The notes not having been paid at maturity were protested, and it is alleged that notice of protest was mailed to the indorsers.   Subsequently the plaintiff took from the maker a promissory note for $900, in part as collateral for the two notes indorsed by the defendant.   This collateral note was renewed from time to time, on payment of the interest, and was finally reduced by payments to $600.   The maker when making these payments directed that they be applied to the $500 note, indorsed by Pennock, which was accordingly done.   This suit was brought against the defendant on the notes indorsed by him, and he seeks to avoid liability on the ground that the acceptance of the collateral note was, in effect, an extension of time to the maker, without the defendant's consent, and that, therefore, he was released from liability.   The other principal ground of defense relied on here is the refusal of the court to affirm the defendant's third point, that: "Where the bank holds funds of the maker of a note, when the note matures, it is bound to consider the interest of the indorser, and if it allows the maker to withdraw his funds, the bank is liable and cannot recover against the indorser."   At the close of the evidence a verdict was directed for the plaintiff.

There would seem to be no room for serious dispute as to

the law of the case.  There is nothing in the evidence showing an extension of time to the maker on the notes in suit; and this cannot be implied from the fact that a note of the maker, as collateral to those in suit, was taken by the bank.  "Nothing short of an agreement to give time which binds the creditor and prevents his bringing suit, will discharge the surety. Giving time and a contract to give time are distinct and independent things:" Brubaker v. Okeson, 36 Pa. 519.   This principle applies, with like force, to makers and indorsers of commercial paper.  It has been held that the acceptance from the maker of a new note for the same debt, with a new indorser will not operate as a payment of the old note, unless it was so intended by the parties, and this is a question for the jury: Kemmerer's Appeal, 102 Pa. 558 ; Dougherty & Co. v. Bash, 167 Pa. 429.   "Taking a new note for the same debt mentioned in the old, without an agreement to give time to the drawer, or to deliver up the old note to him, or that the new shall be taken in satisfaction of the old note, has ever been considered a mere collateral security, which does not effect or alter the original liabilities of the parties on the old note in any respect whatever:" Weakly v. Bell et al., 9 Watts, 273.   See also McCartney v. Kipp, 171 Pa. 644.   This rule is founded upon the doctrine that in order to be binding, an agreement to extend the time of payment must have the essential elements of a contract, including a sufficient consideration and a definite period of time: Campbell v. Floyd, 153 Pa. 84.

It is alleged in the appellee's paper-book that the collateral note and its renewals contained these words : " This note being given in part as collateral security for two notes of $200 each, indorsed by Jos. N. Marshall."   But this does not appear in the notes of evidence, and no copy of this note is given in the paper-books, although it was probably introduced in evidence, and is now relied upon as a material feature of the case.   It is the duty of the appellant to print the entire evidence, including all documents material to the issue, as required by the rules of court.   If this provision was by a separate writing, or was, as alleged, incorporated as a part of the collateral note, it would come within the ruling of Weakly v. Ball, above quoted, and would be for the court to construe ; otherwise the purpose of the parties in giving the collateral note would be wholly for the jury, under proper instructions.

The third point of defendant, above quoted, is, as an abstract proposition, correct, and as such might have been affirmed. But it did not correctly state the facts of the present case, and for this reason was rightly refused. If the evidence showed that, at the time either of the notes in suit matured, the bank held sufficient funds of the maker to meet either, it was in duty bound to apply the funds in payment, and, failing to do so, could not recover from the indorser. This is on the principle that where the creditor has the means of satisfaction, belonging to the principal debtor, actually or potentially within his grasp at the maturity of the obligation, he must retain it for the benefit of the surety, or the latter will be relieved from liability. But this duty is not a continuing one in the case of a bank holding commercial paper. The deposit must be sufficient at the maturity of the note ; subsequent deposits will not raise the duty: Bank v. Peltz, 176 Pa. 513. "The general rule is well settled that, while the bank may appropriate funds in its hands belonging to any previous party to the note, to the payment of it, . . . . yet it is not bound to do so. The note may be treated as, in effect, an order or check authorizing the bank to apply the deposit to the payment, but the deposit is not payment in law. . . . But where the bank holds funds of the maker when the note matures, it is bound to consider the interests of the indorsers or sureties, and if it allows the maker to withdraw his funds after protest, and the indorsers are losers thereby, the bank is liable to them. The reason of this rule is, that the maker is the principal debtor, and liable to all the indorsers, whose undertaking is to pay if he does not:" Bank v. Seitz, 150 Pa. 632, cited approvingly in Bank v. Peltz, supra. There was no attempt here to show the state of Brick's account at the maturity of the notes, and, in the absence of evidence showing a balance in his favor sufficient to meet them at that time, this rule could not be applied. The fact that the defendant may have been an accommodation indorser does not affect his liability under the evidence in this case.

We think the court below erred in directing a verdict for the plaintiff on all the evidence. This for a reason not referred to in the argument, but adequately raised by the eighth specification. It is within the power of the court to pass upon the evidence when the facts or the conclusions to be drawn from

them are not in dispute. And when the evidence involves the intrinsic effect of a paper, its construction is exclusively for the court. Where, however, the question is not the legal effect of a written instrument, and it is offered as evidence of a fact, merely, its interpretation is for the jury: McGee v. Bank, 5 Watts, 32. In this case the protest of a notary public was held to have the probative force of a deposition only, a substitute for oral testimony delivered at bar. "It is but testimony of a witness still; and its having been put upon paper, not more for the sake of convenience than necessity, cannot change its properties or its nature. Had the notary testified in person, as he might, that he had given notice at Northumberland, no one would pretend it to be the province of the court to say whether he meant that he had given it through the post office or that the party was present to receive it. His meaning would be for the jury, and so it must be in respect to what he testifies under the sanction of an official, instead of a judicial oath." The Act of January 2, 1815, 6 Sm. L. 238, as well as the Act of December 14, 1854, P. L. (1855) 724, makes the acts, protests and attestations of notaries public prima facie evidence; and such has been the legal status and effect ascribed to notarial certificates by the courts: Kase v. Getchell, 21 Pa. 503; Bennet v. Young, 18 Pa. 261. In this last case it was held that the power of a notary cannot be extended by the language of his official protest, and it can have no greater legal effect than is given by the act of assembly. By the statutes referred to it is expressly provided, "That any party may be permitted to contradict, by other evidence, any such certificate." In the present action, brought more than four years after maturity of the notes, the plaintiff did not rely upon the notarial certificate, alone, to show notice of protest to the defendant, but gave oral testimony on this point, by the notary's clerk, to the effect that the body of the certificate was prepared by him and that he (the clerk) mailed the notices of protest to the defendant by 4 o'clock on the day of protest. Further testimony, by a letter carrier, was to the effect that a letter if mailed by 4 o'clock on any working day would be delivered at the house of the defendant on the same day. It is not alleged in the certificate or in the parol testimony that the letter inclosing the note of protest was "a prepaid letter,"

or that it was properly stamped for transmission and delivery. This we think was part of the necessary preliminary proof in order to raise the presumption of delivery by mail to the defendant. The defendant testified that he never received any notice of protest, and had no knowledge of any kind, directly or indirectly, that the notes had been dishonored, and that he was never called upon to pay them until about the time this suit was commenced. While this testimony is not literally in contradiction of the notarial certificate in the present case, it is certainly in contradiction of its import and legal purpose. The object of such certificate is to show a notice of protest to the indorser, and this testimony of the defendant is in denial of the fact thus officially averred. It is, in effect, a denial of the averment of notice contained in the certificate, and sufficient to carry this question to the jury. The certificate sets forth that the notary demanded payment at maturity which was refused and that he thereupon " gave notice of the nonpayment thereof to the indorsers this day by mail through the West Chester post-office, enclosed and directed to Joseph N. Marshall, " the defendant. Whether such notice was deposited in the post-office duly addressed, is a question of fact depending on parol testimony. It is not an official declaration, and like all questions when resting in parol, is for the jury to decide, under proper instructions.

This conclusion does not conflict with the earlier decisions of the Supreme Court holding that sending notice of protest by mail is constructive notice, and sufficient in law. " It is sufficient proof of delivery of a notice to show, that it was sent in a letter by post, without proving that the letter was received, provided the delivery be on the day on which notice should be given. The presumption is a fair one that the letter reaches its destination in due time ; and whether it does or not, this is all the law requires; it would be extremely inconvenient to require more:" Smyth v. Hawthorn, 3 Rawle, 355 ; Weakly v. Bell, 9 Watts, 273 ; Jones v. Wardell, 6 W. & S. 399 ; Smith v. Bank, 5 S. & R. 318.

Under the evidence of the plaintiff, whether the notice was mailed was made to depend on oral testimony as well as on the notary's certificate. The whole question was thereby drawn to the jury : Association v. Kilpatrick, 140 Pa. 405. The case

of Jensen v. McCorkell, 154 Pa. 323, was, like the present, a suit against the indorser of a promissory note, and the only question there was whether the defendant was legally notified of the dishonor of the note. The notary by whom the note was protested testified that he inclosed notice of protest, in an envelope addressed to the defendant at his place of residence in the city and mailed it at the post-office. It was also in evidence that the carrier delivery service delivered the defendant's mail at a subpost-office, where he usually received mail. The defendant denied having received notice of protest. In affirming a judgment for the plaintiff the Supreme Court said: " The plaintiff's evidence, as we have seen, was to the effect that on the day the note was dishonored, a notice of protest properly addressed to defendant was deposited in the Philadelphia post-office. In due course of mail the letter thus deposited by the notary would be properly transmitted to the subpostoffice—in the vicinity of defendant's residence—where he was accustomed to regularly receive his letters and other mail matter. The plaintiff's evidence on that subject was sufficient to warrant the jury in finding the fact of which their verdict is necessarily predicated, viz: that the letter reached its destination—defendant's place of business or residence—by due course of mail, etc. As we said in Whitmore v. Dwelling House Insurance Co., 148 Pa. 405; 23 Atl. R. 1131, it is well settled that the fact of depositing in the post-office a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed; but that prima facie proof may be rebutted by evidence showing it was not received. The question is one of fact solely for the determination of the jury under all the evidence:" Folsom v. Cook, 115 Pa. 539; Insurance Co. v. Tunkhannock Toy Co., 97 Pa. 424; Huntley v. Whittier, 105 Mass. 391; Briggs v. Hervey, 130 Mass. 186; London Assurance Co. v. Russell, 1 Pa. Superior Ct. 320.

We think that under the evidence this case should have been submitted to the jury.

For the reasons given the judgment is reversed and a venire de novo awarded.